UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-30208
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JALTHEUS COOPER, also known as Tweet Cooper,

Defendant-Appellant,

_____

No. 00-30209
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDWARD FAULK, also known as Lite Bread Faulk,

Defendant-Appellant,

_____

No. 00-30210
_____

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                        versus

ERNEST GREEN, also known as Serv-it Green,

                                        Defendant-Appellant,

                        _____

                        No. 00-30450
                        _____

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                        versus

JAMES ALEXANDER, also known as Coco Alexander,

                                        Defendant-Appellant.

        _____

                Appeals from the United States District Court for the
                        Eastern District of Louisiana
        _____

                        November 26, 2001

Before KING, Chief Judge, and DUHÉ and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

        This direct criminal appeal involves four appellants who pleaded guilty to distribution of an

unspecified quantity of heroin and conspiracy to possess with intent to distribute an unspecified

quantity of heroin in violation of 21 U.S.C. §§ 841(a)(1) & 846. One appellant, Edward Faulk, also pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The appellants raise various sentencing errors. We conclude that the district court erroneously enhanced Edward Faulk's sentence for possession of a firearm under U.S.S.G. § 2D1.1(b)(1) and committed plain error as to Faulk's term of supervised release. Thus, we VACATE and REMAND Faulk's sentence. We AFFIRM the sentences of Jaltheus Cooper, Ernest Green, and James Alexander.

I.    BACKGROUND

This consolidated appeal arises from heroin trafficking that occurred in the St. Thomas housing project in New Orleans. Appellants Jaltheus Cooper, Edward Faulk, Ernest Green, and James Alexander, along with codefendant Jacqueline Thompson (not party to this appeal), were charged in a five-count indictment with distribution of unspecified quantities of heroin in violation of 21 U.S.C. § 841(a)(1) and with conspiracy to possess with intent to distribute an unspecified quantity of heroin in violation of 21 U.S.C. §§ 841 (a)(1) and 846. In addition, Faulk was charged with possession of a firearm by a felon.

Cooper, Faulk, and Green, as well as Thompson, pleaded guilty and agreed to cooperate with the government in the case against Alexander. After his codefendants agreed to plead guilty, Alexander changed his plea to guilty on the day of his scheduled trial. Cooper, Faulk, and Green agreed to a factual basis which contained the following information. Thompson distributed 2.5 grams of heroin to an undercover agent and a cooperating witness. Green similarly distributed 4.2 grams. Faulk and Cooper distributed 6.9 grams to an undercover agent and a cooperating witness. Faulk possessed a firearm while previously having been convicted of a felony. The firearm was seized from

3

a vehicle occupied by Faulk, and Faulk personally placed it inside a motor vehicle. Cooper, Faulk, and Green also agreed that they conspired with each other and Thompson "to possess with the intent to distribute not more than one (1) kilogram of heroin." Alexander agreed in a separate factual basis that he distributed 4.2 grams of heroin to an undercover cooperating witness. Alexander further agreed to the conspiracy to distribute "a quantity of heroin;" but he disputed the assertion that the amount of heroin involved was at least one kilogram.

The government submitted a notice with an accompanying affidavit from the case agent to establish that the quantity of heroin attributable to each of the co-conspirators was at least one kilogram over the course of the conspiracy. The presentence reports (PSR's) for each defendant calculated the base offense level as 32 based on one kilogram of heroin attributable to the defendants. One kilogram is the minimum amount necessary for a base offense level of 32 under U.S.S.G. § 2D1.1(c)(4).

Prior to the sentencing hearing for Cooper, Faulk, and Green on February 16, 2000, all defendants joined in objecting to the PSR's attributing one kilogram of heroin to them. The district court conducted an evidentiary hearing for the purpose of determining the drug quantity. ATF Agent Michael Eberhardt testified at the hearing, further elaborating on his affidavit.

Eberhardt testified that the investigation of this matter was conducted by agents and officers of the Bureau of Alcohol, Tobacco, and Firearms, and the New Orleans Police Department over the course of 18 to 24 months beginning in March 1997, and that the quantity of heroin involved in the conspiracy was "more than 850 grams." He further testified that his investigation began when a reliable confidential informant identified Cooper, Faulk, Green, Alexander, and Thompson as individuals distributing heroin in the St. Thomas housing project. Eberhardt determined the total

4

amount of heroin involved in the conspiracy by adding various quantities discovered from source information to estimated quantities from personal observation of heroin transactions.

Eberhardt first learned that in November 1996 the Jefferson Parish Sheriff's Office seized from the mail a package sent from New York addressed to Claude Robinson in Marrero, Louisiana. The package contained approximately 59 "bundles" of heroin. Robinson told Eberhardt that the package had been arranged for and belonged to Faulk and Cooper. He further said that he had received a total of nine similar packages of heroin. Eberhardt used a conservative estimate of 0.5 grams of heroin contained in each bundle. The total amount of heroin received by Robinson on behalf of Faulk and Cooper was estimated to be 265.5 grams. Eberhardt testified that the seized heroin was unique in the way it was packaged in wax papers with the number "911" or the word "Amazing" stamped in red on the wax paper.

During the course of the investigation Eberhardt also interviewed a person named Darryl Fisher, who identified himself as a "runner" for Green, meaning that he made hand-to-hand sales of heroin for Green. According to Fisher, he distributed approximately one bundle of heroin per day for ten months, or a total of 140 grams of heroin. Fisher also related to Eberhardt that Cooper, Faulk, Green, and Alexander were distributing heroin in St. Thomas.

Codefendant Thompson told Eberhardt that she sold heroin for Cooper and Faulk for approximately ten months. She also had knowledge that Green and Alexander were selling for Cooper and Faulk. Thompson sold approximately two bundles per day for ten months, or a total of approximately 300 grams of heroin.

Another source of information was a New York heroin supplier named Victor Castro. Castro told Eberhardt that on two separate occasions Cooper and Faulk had met with him in New York and

5

purchased a total of $20,000 worth of heroin. Using the street value of the heroin in New Orleans, which is conservative compared to heroin in New York, Eberhardt estimated that Cooper and Faulk had purchased 40 grams of heroin from Castro.

Eberhardt further discovered that the U.S. Postal Service had seized a package originating from a "target return address" in New York containing 65 bundles of heroin. This package was sent to Lionel Greer, who Eberhardt knew to be involved with the conspiracy. During an interview with Eberhardt, Greer admitted that the heroin was for people in the St. Thomas project, but he did not give any names. The heroin was packaged in wax paper with "911" or "Amazing" stamped on it, which Eberhardt testified was unique to the Cooper and Faulk group. The total amount of heroin was approximately 32.5 grams.

The last specific source of information was Warren Woody, who Eberhardt had determined was Cooper and Faulk's main supplier in New York. Woody was arrested by New York police in late 1997 while in possession of 200 bundles of heroin, each packaged in wax paper and stamped with "911" or "Amazing." Woody also possessed a bus ticket to New Orleans at the time of his arrest, and Woody's girlfriend told police that he had planned to meet friends in New Orleans. The amount of heroin attributed to the Cooper and Faulk organization from Woody was estimated to be 100 grams. The total amount of heroin derived from Robinson, Fisher, Castro, Cooper, and Woody was 878 grams.

Eberhardt also testified that beginning in March 1997, he spent approximately 700 hours doing surveillance at the St. Thomas housing project and participating in traffic stops. He personally witnessed numerous heroin transactions involving Green. He also stated that during the traffic stops people would be found with small amounts of heroin, such as two or three bundles, that they had just

6

purchased. Based on the 878 grams of heroin identified from other sources and the quantities from his own personal observation during surveillance and traffic stops, Eberhardt testified that one kilogram was a conservative estimate of the amount of heroin involved in the conspiracy from November 1996 through May 1999.

Based on Eberhardt's affidavit and testimony and the factual basis stating that "not more than one (1) kilogram" of heroin was involved, the district court overruled the defendants' objections to the amount of heroin. The district court found that the evidence showed enough activity in the conspiracy that the defendants could have reasonably foreseen the amount of drugs distributed to be at least one kilogram.

The government filed a motion for downward departure with respect to Cooper, Faulk, and Green based on their substantial assistance, recommending a downward departure of ten percent of their respective sentences. The district court granted the motion. The court sentenced: (1) Cooper to 151 months and 5 years supervised release; (2) Faulk to 211 months and 5 years supervised release; (3) Green to 136 months and 5 years supervised release; and (4) Alexander to 140 months and 4 years supervised release.

Cooper, Faulk, and Green each filed a timely notice of appeal. Alexander filed a notice of appeal that was later deemed untimely. Ultimately, on remand, the district court found excusable neglect, and thus we now have jurisdiction over his appeal.

Meanwhile, after Faulk had been sentenced, the U.S. Probation Office issued a revised PSR, deleting two criminal history points that had been erroneously attributed to Faulk, which resulted in a lower guideline range. Faulk then filed a motion to enforce the downward departure recommendation that the government had made with respect to his first sentencing so that he would

again receive a ten percent downward departure from the revised guideline range for his substantial assistance. The government objected, and the district court imposed the original sentence of 211 months at resentencing. Faulk timely filed a supplemental notice of appeal to include the district court's denial of his motion to enforce departure.

II.     ANALYSIS

A.      Amount of Heroin Attributable to the Appellants

All four appellants argue that the district court erred in finding that one kilogram of heroin was involved in the conspiracy. Under the sentencing guidelines, the base offense level for a defendant convicted of a drug offense is determined based on the amount of drugs involved. *See* U.S.S.G. § 2D1.1(a)(3). The quantity includes the drugs for which the defendant is directly responsible and the drugs that can be attributed to him in a conspiracy as relevant conduct. *See* § 1B1.3(a)(1). A district court's factual determination of a defendant's relevant conduct for sentencing purposes is reviewed for clear error. *See United States v. Schorovsky*, 202 F.3d 727, 729 (5th Cir. 2000); *United States v. Puig-Infante*, 19 F.3d 929, 942 (5th Cir. 1994). A factual finding is clearly erroneous "'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Hill*, 42 F.3d 914, 918 (5th Cir. 1995)(citation omitted). A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole. *Puig-Infante*, 19 F.3d at 943.

1.      Cooper

Cooper's only argument on appeal is that the district court was clearly erroneous in its finding that one kilogram of heroin was involved in the conspiracy. Cooper concedes that Eberhardt's testimony was well-founded as to 745.5 grams of heroin. He asserts that the testimony was dubious

8

and/or speculative as to the remaining amounts up to one kilogram. Cooper contests the 32.5 grams that were seized from the package addressed to Lionel Greer, arguing that although Greer said the heroin was intended for the St. Thomas housing project, he could not provide any names. Cooper further argues that the 100 grams seized from Warren Woody in New York was unreasonably linked to the conspiracy based only on the fact that Woody possessed a bus ticket to New Orleans when he was arrested. He further challenges the remaining 192 grams of heroin on the basis that Eberhardt's testimony was unverifiable conjecture. Finally, Cooper argues that nothing in the record supports Eberhardt's testimony concerning the packaging of the heroin that shows such packaging was unique to this conspiracy.

Ordinarily, a PSR bears sufficient indicia of reliability to be considered as evidence by the sentencing judge when making factual determinations. *See United States v. Narviz-Guerra,* 148 F.3d 530, 537 (5th Cir. 1998). The district court may adopt the facts contained in the PSR without further inquiry if the facts have an adequate evidentiary basis and the defendant does not present rebuttal evidence. *See United States v. Alford,* 142 F.3d 825, 832 (5th Cir. 1998). Although he cross-examined Eberhardt, Cooper presented no rebuttal evidence to the PSR's calculation based on one kilogram of heroin. In addition to the PSR, however, the district court had the benefit of an affidavit and live testimony from Eberhardt concerning the investigation into the Faulk and Cooper organization.

The evidence was sufficient to link the 32.5 grams of heroin addressed to Lionel Greer to this conspiracy. First, Greer admitted to Eberhardt that the heroin was meant to be distributed in St. Thomas. Despite Cooper's assertion that Greer "could not provide any names," Eberhardt's testimony was that Greer "did not" specifically name anyone. Eberhardt testified, however, that the

9

package was sent from a New York address that had been targeted as part of the investigation into the present conspiracy.   He also testified that he knew Greer "to be involved in the conspiracy to an extent."   Finally, the heroin was packaged in wax paper with the telltale "911" and "Amazing" stamped on it, which Eberhardt testified was unique to this conspiracy.  Eberhardt testified that heroin sold in other parts of the city was packaged in foil, rather than wax paper, and that the packaging helps identify the group to which it belongs.

As for the 100 grams of heroin seized from Woody, Eberhardt testified that he had identified Woody as Cooper and Faulk's main New York supplier.   Woody was on his way to New Orleans "to meet friends" when he was arrested with the heroin, as evidenced by his possession of the bus ticket.   The heroin also was in the same unique wax paper packaging as the heroin sold by Cooper and Faulk.

It is true, as intimated by Cooper, that heroin packaged in wax paper conceivably could have been destined for others in New Orleans.  Cooper's argument would be stronger if the packaging was the only link between the heroin and this conspiracy.  However, when the heroin also originates from people who are identified as Cooper and Faulk's main supplier (Woody) and as being involved in the conspiracy (Greer), it is not implausible that the heroin was meant for Cooper and Faulk.  *Puig-Infante*, 19 F.3d at 942.  There is no clear error in the district court's finding.

As for the remaining amounts of heroin, Eberhardt testified that he spent numerous hours of surveillance observing the members of the conspiracy engaged in heroin transactions.  He received daily reports from confidential informants concerning the drug activity of the defendants.  He arranged for a confidential informant to make purchases directly from each of the defendants, which totaled approximately 13.6 grams.  He further participated in numerous traffic stops of individuals

10

who had just purchased between two and three bundles of heroin from the defendants. Eberhardt testified that the traffic stops would "easily" bring the total amount of heroin "to near 1,000 [grams], if not over." Finally, Eberhardt testified that his calculation of the amounts seized from the various sources used a "very, very conservative estimate" of .5 grams per bundle and that one kilogram was "a conservative estimate" of the total amount for the conspiracy from November 1996 to May 1999.

A district court may consider "'estimates of the quantity of drugs for sentencing purposes.'" *Alford*, 142 F.3d at 832 (quoting *United States v. Sherrod*, 964 F.2d 1501, 1508 (5th Cir. 1992)). Eberhardt made clear that his numbers were estimates and that they were on the conservative side. The district judge stated that she "believe[d] the agent's estimate." *See also Puig-Infante*, 19 F.3d at 943 (upholding drug quantity finding where district court explicitly stated that it relied not only on the PSR but also the testimony from the witness stand). As such, Cooper has not shown clear error in the district court's finding that one kilogram of heroin was attributable to the conspiracy.

2.    Faulk

Faulk asserts that the district court erroneously used one kilogram as the amount of drugs involved rather than the 13.6 grams of heroin admitted in the factual basis. Faulk argues that Eberhardt's testimony that Faulk and Cooper were the main suppliers was based on uncorroborated hearsay by informants. He contends that Eberhardt's testimony concerning the quantity of heroin is therefore speculative.

A district court has wide discretion in determining which evidence to consider and to credit for sentencing purposes. *See United States v. Davis,* 76 F.3d 82, 84 (5th Cir. 1996). The defendant bears the burden of showing that the information relied upon by the district court is materially untrue. *Id.* As outlined above with respect to Cooper, the district court did not err in determining the amount

11

heroin to be one kilogram.

### 3. Green

Green also argues that the district court erred in determining that one kilogram of heroin was attributable to the defendants. Green asserts that Eberhardt failed to testify directly that the amount of heroin was one kilogram and merely agreed with a leading question from the prosecutor. Green's argument is unavailing. As noted in detail above with respect to Cooper, Eberhardt's testimony was extensive concerning the amounts of heroin involved. The district court also had the benefit of Eberhardt's affidavit, which likewise stated that the amount involved was "at least one kilogram."

### 4. Alexander

Alexander argues that the district court erred in attributing one kilogram of heroin to him because: (1) the evidence was insufficient to prove the amount was one kilogram, as the PSR's calculation was founded on a factual basis agreed to by the other defendants who were more culpable and more involved in the conspiracy;[1] (2) his role in the conspiracy was limited in that he was incarcerated on unrelated charges prior to October 30, 1996 and reincarcerated in 1998, and thus could not be held responsible for amounts of heroin involved while he was in prison; (3) the government's evidence showed he was involved in only one transaction involving 4.2 grams of heroin; and (4) he presented evidence showing that he had withdrawn from the conspiracy. In the district court, Alexander challenged the amount of drugs involved in the conspiracy and presented evidence at an evidentiary hearing in an attempt to rebut the PSR's findings with respect to the amount of drugs attributable specifically to him.

---

[1] The factual basis signed by Alexander provided that the amount of heroin was in dispute. The factual basis with respect to the other appellants provided that "not more than one (1) kilogram of heroin" was involved in the drug offenses.

It is well established that relevant conduct under the sentencing guidelines includes all reasonably foreseeable acts of coconspirators in furtherance of the conspiracy. *See* § 1B1.3(a)(1)(B). Nonetheless, "the reasonable foreseeability of all drug sales does not automatically follow from membership in the conspiracy." *United States v. Wilson,* 116 F.3d 1066, 1077 (5th Cir. 1997), *vacated in part sub. nom. United States v. Brown*, 123 F.3d 213 (5th Cir.1997) (en banc).[2] To determine a defendant's sentence for participation in a drug conspiracy, the district court must make the following findings: (1) when the defendant joined the conspiracy; (2) the quantities of drugs that were within the scope of the agreement; and (3) the quantities the defendant could reasonably foresee being distributed by the conspiracy. *Id.* at 1076.

The conspiracy count (to which Alexander pleaded guilty) alleged that the conspiracy began "at a time unknown, but prior to in or about November 1996, and continuing through the filing of this indictment," which occurred on May 21, 1999. It is undisputed that Alexander was released from prison in October of 1996. He was reincarcerated sometime in 1998.[3] At the evidentiary hearing, Eberhardt testified that the first time he was able to corroborate Alexander's involvement in the conspiracy through his confidential informant was on April 24, 1997. On cross examination, Agent Eberhardt admitted that he could "only prove that [Alexander] distributed heroin on one occasion." Eberhardt was referring to the 4.2 grams of heroin he witnessed Alexander sell on May 7, 1997. That conduct formed the basis of the distribution count in the indictment to which Alexander pleaded

---

[2] The relevant portion of the panel opinion "remain[ed] unaffected." *United States v. Brown,* 161 F.3d 256, 257 n.1 (5th Cir. 1998) (en banc).

[3] In its statement of reasons for imposing sentence, the district court indicated that Alexander was reincarcerated in May of 1998. The PSR indicates that Alexander was arrested on October 21, 1998 on a state charge of possession of heroin.

guilty. Eberhardt further testified that, as compared to codefendant Ernest Green, Alexander was not a "regular" selling drugs on the corner.

Additionally, in an affidavit, Eberhardt provided that during his investigation he interviewed codefendant Thompson, who stated that she had personal knowledge of Alexander selling heroin for Faulk and Cooper. Eberhardt's affidavit further provided that he interviewed Daryl Fisher, a heroin dealer who worked for Green, and Fisher stated that he had personal knowledge that Faulk, Cooper, Green, and Alexander were all involved in the distribution of heroin.

In rebuttal, Alexander called as a witness Richard Krumm, who had been the general manager of a New Orleans restaurant called Metro Bistro. Krumm testified that Alexander worked as a dishwasher at the Metro Bistro "at least 30 to 40 hours a week" from October of 1997 until May of 1998. Business records were also introduced that corroborated this testimony. In contrast, the evidence at the hearing and in the PSR indicates that the other defendants were not gainfully employed.

Alexander also called as a witness Reverend Torin Sanders, who was a pastor at the Sixth Baptist Church in New Orleans. Reverend Sanders testified that Alexander became an active member in late 1996 after being released from prison. Alexander was involved in the drug ministry and attended meetings on Monday nights and also attended Reverend Sanders' monthly service at the parish prison. Alexander stopped attending in March or April of 1997 and became active again in the ministry in the summer of 1998.

After hearing this evidence, the district court issued a statement of reasons for imposing sentence, which provided in part as follows:

Defendant objects to the finding that the readily provable amount attributable to the

14

conspiracy for sentencing purposes is one kilogram. Defendant has objected to the quantity of heroin attributed to him. Defendant asserts that the amount of one kilogram was a negotiated weight for sentencing purposes for other defendants who played greater roles in the conspiracy and were members of the conspiracy for longer periods of time. Defendant states that his role was limited in time and activity, as shown by the fact that he was incarcerated until October 26, 1996, and further, that the government's evidence reveals that he was observed during only a single transaction on May 7, 1997.

Pursuant to the evidence adduced at the defendant's evidentiary hearing and the affidavit of Special Agent Eberhardt, the Court finds that defendant Alexander could foresee the sale of at least one kilogram of heroin by the conspiracy. The Court finds sufficient evidence in support of Alexander's participation in the drug conspiracy, to which Alexander plead guilty, for the period between his release from custody in October 1996, and his reincarceration in May, 1998, such that Alexander could reasonably foresee the sale of at least one kilogram of heroin in connection with the joint criminal activities of the Faulk conspiracy. In addition, the Court finds that defendant's involvement in drug ministry and/or full-time employment does not preclude his involvement in the Faulk drug conspiracy.

In short, the district court expressly considered Alexander's arguments and evidence but nevertheless concluded that he participated in the conspiracy from October of 1996 through May of 1998 and based on that participation, could have reasonably foreseen the sale of at least one kilogram.

Our review of the evidence indicates that Alexander certainly was not as involved in the conspiracy as Faulk, Cooper, or even Green. The evidence indicates that Faulk and Cooper received a greater share of the profits and were in charge of the organization. Also, Alexander's evidence regarding his employment and drug ministry participation tends to limit his role in the conspiracy and the scope of his agreement. The district court, however, considered that evidence and expressly found that Alexander's involvement in the drug ministry and his full time employment did not preclude his involvement in the conspiracy.

Additionally, we are mindful that a district court should consider whether a defendant's

15

incarceration limited the foreseeability of any of the transactions that occurred after the defendant is incarcerated. *Puig-Infante*, 19 F.3d at 945. Again, however, the district court expressly took into consideration the time period in which Alexander was incarcerated.

Under the above described circumstances, the district court's finding is plausible in light of the record as a whole. Therefore, we do not believe that the district court's finding is clearly erroneous.

B. *Apprendi* challenge to prison sentences.

Relying on *Apprendi v. New Jersey,* 530 U.S. 466, 120 S. Ct. 2348 (2000), Alexander, Faulk, and Green argue that their sentences must be vacated and remanded for resentencing.[4] The Supreme Court held last year that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 120 S. Ct. at 2362-63. This Court has applied *Apprendi's* holding to the sentencing scheme for drug convictions under 21 U.S.C. § 841(b). *See United States v. Doggett*, 230 F.3d 160, 164-65 (5th Cir. 2000). In *Doggett*, we held "that if the government seeks enhanced penalties based on the amount of drugs under 21 U.S.C. § 841(b)(1)(A) or (B), the quantity must be stated in the indictment and submitted to a jury for a finding of proof beyond a reasonable doubt." *Id.*

In the present case, the amount of heroin involved in the conspiracy count was not stated in

---

[4] Alexander raised this issue in his initial brief. This Court allowed Faulk to file a supplemental brief in which he raised this issue. In a letter to this Court filed on December 26, 2000, Green adopted the arguments of his codefendants on appeal.

16

the indictment.[5] Error under *Apprendi* requires reversal only if a defendant's sentence exceeds the statutory maximum. *See United States v. Keith*, 230 F.3d 784, 787 (5th Cir. 2000); *Doggett*, 230 F.3d at 165 (stating that even if a drug amount is not alleged in the indictment, *Apprendi* does not apply where the sentence is less than the statutory maximum provided by 21 U.S.C. § 841(b)(1)(C)). Section 841(b)(1)(C) sets the statutory maximum for an offense involving an unspecified amount of a Schedule I substance at 20 years in prison. Heroin is a Schedule I substance. *See United States v. Hernandez-Avalos,* 251 F.3d 505, 508 (5th Cir. 2001); § 812(c), Schedule I(b)(10). The appellants' sentences of imprisonment do not exceed the statutory maximum: 211 months (Faulk) 140 months (Alexander); and 136 months (Green). *Apprendi* therefore offers no succor with respect to the sentences of imprisonment.

      C.     *Apprendi* challenge to supervised terms of release.

In Faulk's supplemental brief, he sets forth his *Apprendi* argument and concludes by generally challenging the length of the term of supervised release imposed under the charging statute, 21 U.S.C. § 841. And, as previously noted, Green adopted all applicable arguments made by the other appellants. Faulk and Green thus have adequately challenged their terms of supervised release.

Faulk and Green pleaded guilty to distribution of heroin and conspiracy to possess with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1) and 846. Because the indictment did not set forth the quantity of heroin, the appellants are guilty of a Class C felony. Title 18 § 3583(b)(2) provides that "*[e]xcept as otherwise provided*, the authorized terms of supervised release are . . . for a class C or D felony, not more than three years . . . ." (emphasis added). This Court has recognized

_____

[5] We note that the factual basis agreed to by Cooper, Faulk, and Green stated that the amount of heroin involved was "not more than one (1) kilogram."

17

that § 3583(b) is a *default* supervised release statute.  *United States v. Meshack,* 225 F.3d 556, 578 (5th Cir. 2000).  In the case at bar, the appellants were convicted under 21 U.S.C. § 841(a)(1).  The corresponding penalty section,  § 841(b)(1)(C), provides that in the case of a controlled substance in schedule I (here, heroin), a defendant with no prior felony drug conviction shall receive a term of supervised release of "at least three years."  This Court has recognized the differing language in the two statutes, § 3583(b)(2) and § 841(b)(1)(C), and determined that a defendant with no prior felony drug conviction is "required to receive a supervised release term of not less than nor more than three years."  *United States v. Kelly*, 974 F.2d 22, 24 (5th Cir.1992).  However, if a defendant does have a prior felony drug conviction that has become final, § 841(b)(1)(C) provides that the court must "impose a term of supervised release of at least 6 years in addition to such term of imprisonment."

The record indicates that Faulk does not have a prior felony drug conviction but that Green does have such a prior conviction.  Under these circumstances, Green is not entitled to relief; Faulk, however, should have received a three-year term of supervised release.  Faulk did not object.  Nevertheless, "[u]nder plain error review, we correct overlong terms of supervised release."  *Meshack,* 225 F.3d at 578 (citing *Kelly*, 974 F.2d at 24-25).[6]  This Court has modified terms of supervised release that exceeded the statutory maximum without remanding for resentencing.  *See Doggett,* 230 F.3d at 165 n.2.  However, as set forth below, because we are vacating Faulk's

---

[6] Although Alexander raised an *Apprendi* challenge, he did not specifically challenge his term of supervised release.  Cooper did not raise any *Apprendi* challenge.  Nevertheless, we have raised *sua sponte Apprendi* issues  in other cases. *See United States v. Gonzalez*, 259 F.3d 355, *vacated for rehearing en banc*, 2001 WL 946413 (Aug. 15, 2001); *United States v. Vasquez-Zamora,* 253 F.3d 211, 214 (5th Cir. 2001); *United States v. Garcia,* 242 F.3d 593, 599 (5th Cir. 2001).  We decline to review on our own motion an *Apprendi* challenge to Cooper and Alexander's terms of supervised release.  We note that even if we exercised our discretion to do so in this case, the record indicates there was no plain error.

18

sentence on another ground, the district court will have the opportunity on remand to correct the term of supervised release to the statutorily mandated three-year term.

D.     Faulk's Enhancement for Possession of a Firearm under § 2D1.1(b)(1).

Faulk argues that the district court erroneously enhanced his sentence based on possession of a firearm under U.S.S.G. § 2D1.1(b)(1),[7] which provides that "[i]f a dangerous weapon (including a firearm) was possessed, increase by **2** levels." Although in the instant case he pleaded guilty to the offense of being a felon in possession of a gun in violation of 18 U.S.C. § 922(g)(1), he argues that the gun he illegally possessed had no connection to the heroin offenses. Faulk states that when he was arrested and the gun was seized from the vehicle there was no heroin found in the vehicle and there was no evidence linking the car to the heroin trafficking. Without such a nexus, Faulk argues, the enhancement was unwarranted.

As indicated, the sentencing guidelines pro vide that the defendant's sentence should be increased by two levels whenever, in a crime involving the manufacture, import, export, trafficking, or possession of drugs, the defendant possessed a dangerous weapon. *See* § 2D1.1(b)(1); *United States v. Gaytan*, 74 F.3d 545, 559 (5th Cir. 1996). "The government has the burden of proof under § 2D1.1 of showing by a preponderance of the evidence 'that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant.'" *United States v. Vasquez,* 161 F.3d 909, 912 (5th Cir. 1998) (quoting *United States v. Eastland*, 989 F.2d 760, 770 (5th Cir. 1993)). Under this standard, the government must show that "the weapon was found in the same location where drugs or drug paraphernalia are stored or where part of the transaction occurred."

---

[7] Section 2D1.1 is entitled "Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy."

*Eastland,* 989 F.2d at 770 (internal quotation marks and citation omitted). This is a factual finding and thus reviewed for clear error. *United States v. Jacquinot,* 258 F.3d 423, 430 (5th Cir. 2001).

Faulk correctly asserts that in cases dealing with an enhancement for possession of a firearm there has been evidence affirmatively linking the drug trafficking activity to the weapon or the place where the weapon was found. In *United States v. Brown*, this Court upheld the two-level enhancement pursuant to § 2D1.1(b)(1) where police found a shotgun in the trunk of the defendant's car during the course of their investigation. 217 F.3d 247, 261 (5th Cir. 2000), *remanded on other grounds, Randle v. United States,* __ U.S. __, 121 S.Ct. 1072 (2001). Witnesses provided the necessary link between the gun and the drug trafficking by testifying that the defendant used the vehicle to transport crack cocaine. Similarly, in *Vasquez,* guns kept at the defendant's place of business were used to enhance the sentence because the district court found that the defendant used the business as a location to store drugs and the proceeds of drug sales. *Vasquez,* 161 F.3d at 912; *United States v. Flucas*, 99 F.3d 177, 178-79 (5th Cir. 1996) (enhancement applied where gun and cocaine both found under defendant's car seat); *United States v. Myers*, 150 F.3d 459, 465 (5th Cir. 1998) (gun found in apartment where transactions related to drug conspiracy took place).

In contrast to the facts of *Brown* and *Vasquez*, no heroin or paraphernalia was found in the vehicle when the firearm was seized, and there is nothing in the record showing that Faulk used *that* vehicle to transport heroin or to conduct any other activities associated with the conspiracy. Although a codefendant's affidavit provides that Faulk would "usually" deliver heroin to her while driving a black "Trans Am," the record on appeal does not indicate that Faulk was in that Trans Am on February 2, 1997, when the firearm was seized. Likewise, the codefendant's affidavit does not indicate that Faulk ever possessed a firearm in the Trans Am. It is undisputed that Faulk did not own

20

the vehicle in which he was a passenger at the time the gun was seized. It thus appears unlikely that the Trans Am in which he usually delivered the heroin was the vehicle from which the gun was seized. In any event, it was not proven by a preponderance of the evidence.

The government responds that when Faulk was arrested on February 2, 1997, he was in possession of the firearm during the time line of the charged conspiracy, which ran from "prior to in or about November 1996" to May 1999. It is true that Faulk possessed the gun at a point in time during which the government charged that the conspiracy was still in progress. However, our research has revealed no cases in which the enhancement was applied without drugs being found with the weapon or evidence presented that the location of the weapon was used in connection with drug trafficking activities. As a practical matter, the government's argument would result in an enhancement any time a drug offender is found with a gun regardless of whether drugs are also found or otherwise connected to the gun's location as long as the government alleges that the defendant is involved in an ongoing conspiracy. Of course, such a holding would relieve the government of its burden of proving that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant.

Our decision in *United States v. Siebe,* 58 F.3d 161 (5th Cir. 1995), is instructive on this issue. In that case, the appellant asserted that the district court erred in assessing two points under § 2D1.1(b)(1) based solely on the presumption that he possessed a firearm because he was a police officer. We explained that absent the presumption there was no evidence that Siebe possessed a firearm during the commission of the offense. While we acknowledged that the FBI had discovered 90 guns in Siebe's residence, there was no evidence of drug trafficking activities at the residence. As such, we concluded that the government had not shouldered its burden of proving the requisite

21

connection between the firearm and the drug trafficking. Thus, we remanded for resentencing without the two point enhancement.

We have recognized that firearms are "tools of the trade" in drug conspiracies. *United States v. Mergerson*, 4 F.3d 337, 350 (5th Cir. 1993). Nonetheless, in the instant case, the government failed to demonstrate that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant. Under these circumstances, the district court clearly erred in finding the enhancement under § 2D1.1(b)(1) applies.[8] We therefore vacate Faulk's sentence and remand for resentencing without the enhancement.

     E.     Faulk's Enhancement as an Organizer or Leader.

Faulk argues that the district court erred by finding that he was the organizer or leader of a criminal enterprise and by enhancing his sentence four levels. He argues that rather than being a leader or organizer of criminal activity he was merely a co-supplier of heroin along with Cooper. According to Faulk, he merely distributed the drugs to the codefendants, who could then resell it to anyone they wished. He contends that there was no evidence that he controlled any of the other defendants or claimed a greater percentage of the profit from the drug sales.

"If the defendant was an organizer or leader of a criminal activity that involved five or more

_____

[8] Paraphrasing § 2D1.1, comment. (n.3), the district court stated that "[b]ecause the weapon was present, and it is not clearly improbable that the weapon was connected with the offense, the enhancement is warranted." As set forth above, however, the government did not establish that Faulk possessed the weapon within this Court's interpretation of § 2D1.1, *i.e.* a temporal and spatial relation must exist between the weapon, the drug trafficking activity, and the defendant. Thus, the burden had not yet shifted to Faulk to prove that it was clearly improbable that the weapon was connected with the offense. *Cf. United States v. Marmolejo,* 106 F.3d 1213, 1216 (5th Cir. 1997) (explaining that the firearm was possessed during the commission of a drug offense and the defendant had failed to bear his burden of proving that it was "clearly improbable" that the gun was connected to the offense).

22

participants or was otherwise extensive" a four-level increase is warranted. *See* § 3B1.1(a). In determining whether a defendant is a leader, a court should consider the following factors: "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." § 3B1.1, comment. (n.4). We review such a factual finding for clear error. *United States v. Thomas*, 120 F.3d 564, 574 (5th Cir. 1997).

Contrary to Faulk's arguments, the evidence showed that both Faulk and Cooper were the leaders and organizers of the heroin distribution. At least five participants in the criminal activity are found by looking at the codefendants: Cooper, Faulk, Green, Alexander, and Thompson. *See United States v. Wilder,* 15 F.3d 1292, 1299 (5th Cir. 1994) (defendant may be included among the five participants). Eberhardt testified that Claude Robinson told him the heroin bundles he received had been arranged for, purchased by, and belonged to Faulk and Cooper. Faulk and Cooper further traveled to New York to obtain heroin from Victor Castro, one of their New York suppliers. Faulk and Cooper in turn supplied Green, Alexander, and Thompson. Eberhardt testified that Thompson told him that she sold heroin on behalf of Faulk and Cooper. Thompson also signed an affidavit stating that Faulk had asked her if she wanted to sell heroin herself since she had been referring customers to him. This affidavit provides that Faulk recruited Thompson to sell for him. Moreover, Thompson's affidavit states that she received 5 packs of heroin at a time from Faulk and Green, which she then sold for approximately $1,250. Faulk allowed her to keep $150 of the sale. This arrangement shows that Faulk received a greater share of the profits.

Proof that the defendant supervised only one other culpable participant is sufficient to make the defendant eligible for the enhancement. *See United States v. Washington,* 44 F.3d 1271, 1281 (5th Cir. 1995); *United States v. Okoli,* 20 F.3d 615, 616 (5th Cir. 1994). There can also be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. *See* § 3B1.1, comment. (n.4). Given Faulk and Cooper's arrangement for the heroin deliveries, their supplying of the other defendants, Faulk's recruitment and control of Thompson, and his claim to a greater portion of profit from Thompson's sales, the district court did not err in finding that Faulk was a leader or organizer. *See* § 3B1.1, comment. (n.4); *United States v. Ocana,* 204 F.3d 585, 592 (5th Cir. 2000).[9]

F.      Downward Departure

Faulk argues that the district court erred by failing to actually depart from his applicable guideline range after granting the government's § 5K1.1 motion based on substantial assistance.[10] Specifically, he argues that although the district court initially granted the government's §5K1.1 motion to allow a ten percent reduction in sentence, after an error in the PSR was corrected at resentencing, the court erroneously refused to provide the reduction.

---

[9] Faulk also argues that one point was erroneously added to his criminal history pursuant to U.S.S.G. § 4A1.1(e) for committing the offense less than two years after being released from imprisonment. He contends that because the indictment states the offense commenced on or about November 1996 and he was released from prison on October 28, 1994, he committed the offense more than two years after his release. The indictment actually states that the conspiracy began "at a time unknown, *but prior to* in or about November 1996." (emphasis added). In any event, Faulk concedes in his brief that even if the one point added to his criminal history were removed his sentence would not change. Accordingly, any error is harmless.

[10] In pertinent part, U.S.S.G. § 5K1.1 provides that "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines."

24

A district court has almost complete discretion to determine the extent of a departure under § 5K1.1. *United States v. Alvarez*, 51 F.3d 36, 41 (5th Cir. 1995). The district court also has almost complete discretion to deny the government's § 5K1.1 motion. *Myers*, 150 F.3d at 463. This Court has jurisdiction to review a challenge to a sentence only if it was (1) imposed in violation of law, (2) imposed as a result of an incorrect application of the guidelines, (3) resulted from an upward departure, or (4) was unreasonably imposed for an offense not covered by the guidelines. *United States v. Yanez-Huerta*, 207 F.3d 746, 748 (5th Cir. 2000). We lack jurisdiction to review the district court's refusal to depart downward, unless the district court's refusal was based on a mistaken belief that it lacked the power to depart downward. *Id.* "A refusal to grant a downward departure is a violation of law only if the court mistakenly assumes that it lacks authority to depart." *Id.*

Based on the initial PSR, Faulk's guideline range was 235 to 293 months. After granting the government's § 5K1.1 motion for a ten percent departure, the court sentenced Faulk to 211 months. Subsequently, the probation office revised Faulk's criminal history category in the PSR, resulting in an applicable guideline range of 210 to 262 months. Faulk asserts that after the revision he was entitled to a sentence of 189 months with the § 5K1.1 departure (ten percent). However, the government did not reurge its § 5K1.1 motion at resentencing. Instead, it filed a supplemental motion and memorandum urging the district court "to maintain the current sentence [of 211 months] in light of the very serious nature of this offense along with considerations of the defendant's cooperation." In the court's revised statement of reasons for imposing sentence, it agreed with the government and "decline[d] to modify defendant's sentence." The court resentenced Faulk to the original sentence, 211 months.

Faulk, relying on the following language also contained in the court's revised statement of

25

reasons for imposing sentence, argues that the court in fact granted the government's motion: "The Court finds that the nature, extent, significance, and timeliness of the assistance rendered by the defendant warrant a downward departure." It is unclear but it appears this language may have been inadvertently left in the document from the original sentencing.

Our interpretation of these events is that the government rescinded its § 5K1.1 motion at Faulk's resentencing and thus, the district court did not have the authority to depart downward. "Absent a motion for downward departure made by the [g]overnment, a sentencing court is without authority to grant a downward departure on the basis of substantial assistance under § 5K1.1." *United States v. Price*, 95 F.3d 364, 367 (5th Cir. 1996); *see also Wade v. United States*, 504 U.S. 181, 112 S.Ct. 1840, 1843, 118 L.Ed.2d 524 (1992) (stating that "upon motion of the government" is a condition limiting the court's authority to depart under § 5K1.1).[11] Because the district court did not have authority to grant the departure, it could not have erred in refusing to do so.

Even assuming the government's § 5K1.1 motion was not rescinded, another interpretation of the events would be that the district court denied the motion and simply refused to depart downward. Under that scenario, we have no jurisdiction to review the decision unless the district court was mistaken about its authority to do so, and there is no indication of that in the instant case. *Yanez-Huerta*, 207 F.3d at 748.

Another alternative scenario, again assuming a properly filed § 5K1.1 motion, would be that the district court granted the motion, but failed to depart downward. If so, this scenario would be

---

[11] "[A] district court may review the Government's refusal to move for a downward departure if the refusal is based on an unconstitutional motive." *United States v. Solis*, 169 F.3d 224, 226 (5th Cir. 1999). There has been no assertion that the government's refusal to move for a downward departure at resentencing was based on an unconstitutional motive.

controlled by *United States v. Hashimoto*, 193 F.3d 840, 843 (5th Cir. 1999). In *Hashimoto,* the government filed a § 5K1.1 motion at the defendant's resentencing after appeal and remand. The district court granted the motion, expressly stated that it was granting the departure, and yet imposed a sentence within the guideline range. *Id.* at 843. The defendant appealed, contending that his sentence must be vacated because although the district court granted the §5K1.1 motion it did not depart downward. This Court held that because the defendant was not challenging the extent of an actual downward departure or the denial of a § 5K1.1 motion, "our rule that we will not review the denial of a § 5K1.1 motion does not apply." *Id.* The question was whether, after granting that motion, the district court was required to depart downward. This Court held that although the district court erred in not departing after granting the § 5K1.1 motion, the error was harmless because the sentence imposed was authorized. Likewise, here any error is harmless because the district court was authorized to impose the sentence Faulk received. Accordingly, our precedent precludes Faulk from obtaining relief on this claim.

III.    CONCLUSION

For the above reasons, we VACATE and REMAND Faulk's sentence. We AFFIRM the sentences of Cooper, Green and Alexander.

AFFIRMED in part, VACATED in part, and REMANDED.

27