# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 1, 2021

Lyle W. Cayce
Clerk

No. 20-30492

United States of America,

*Plaintiff—Appellee*,

*versus*

Stephen James Young,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:19-CR-359-1

Before Elrod, Southwick, and Costa, *Circuit Judges*.

Per Curiam:*

Defendant Young pled guilty to passing counterfeited bills. His criminal history included a prior state conviction for possession of methamphetamine, for which he was sentenced to four months imprisonment, and pending state charges for possession of methamphetamine. He appeals from the district court's refusal to consider

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-30492

the four-month state sentence for what he argues is related conduct when deciding on his federal sentence. We VACATE the sentence and REMAND for further proceedings in accordance with this opinion.

## FACTUAL AND PROCEDURAL HISTORY

In March 2020, Stephen James Young pled guilty, pursuant to a written agreement, to passing counterfeited bills in December 2018. The probation officer assigned Young a base offense level of 9, applied a specific offense characteristic to reach an adjusted offense level of 15, and deducted two levels for acceptance of responsibility, for a total offense level of 13. Young's criminal history category was VI, and he faced a guidelines range of imprisonment of 33 to 41 months.

Relevant to this appeal, Young's criminal history included a March 2019 arrest for possession of methamphetamine, for which he was convicted in August 2019 in state court in Lafayette, Louisiana, and sentenced to four months of imprisonment ("Lafayette conviction"). It also included a pending charge in Louisiana state court in Jennings, Louisiana, for a June 12, 2019 arrest for possession of methamphetamine, with a May 11, 2020 trial date ("Jennings charge"). He remained in state custody from the June 12 arrest, and the federal district court ordered his delivery from Louisiana state jail to federal custody for his December 12, 2019 arraignment.

At Young's August 3, 2020 federal sentencing, the district court adopted the Presentence Report and sentenced Young within the guidelines range to 41 months of imprisonment and 3 years of supervised release. At the time of his sentencing, Young had been detained since his June 12, 2019 arrest, had been convicted on the Lafayette conviction and sentenced to four months imprisonment for it, and still had the Jennings charge pending.

No. 20-30492

Young filed a sentencing memorandum requesting a "downward variant sentence," arguing that his criminal history was over-represented, he had addictions to drugs and gambling, and his offense was unsophisticated and non-violent. He also asked the district court to adjust his sentence under U.S.S.G. § 5G1.3(b)(1) by four months for the time in custody for the Lafayette conviction that he would have completed by the federal court's sentencing. He asserted that his four months in custody in connection with his Lafayette conviction "will be credited toward his sentence," citing 18 U.S.C. § 3585(b). Young asserted that he committed the instant counterfeiting offense between December 2018 and June 2019 and that the Lafayette offense was related because he had counterfeited bills to purchase the narcotics. He also requested that the district court apply Section 5G1.3(d) and order the instant sentence to be served concurrently with the anticipated, undischarged sentence for the Jennings charge, which, he argued, was also related to the instant offense.

Much of the discussion at sentencing is relevant to Young's appeal regarding the request of a four-month adjustment or downward departure. The conversation between Young himself and the court centered around the pending Jennings charge, and the court's failure to consider that charge is not appealed. Young's counsel, however, requested the court consider the four months served for the Lafayette conviction, and the district court's refusal to do so is the basis of this appeal.

The district court stated that it understood that Young wanted four months off his sentence, but it clarified that there would be time later in the sentencing for that discussion:

> All right. At some point we're going to get to the issue of requesting a four-month adjustment or credit for time served for possession of methamphetamine, indicating an argument that his quest for money, production of counterfeit currency,

No. 20-30492

and the presentation of counterfeit currency to the various victims identified, were all connected to his quest for meth.

In this particular instance, I am going to pretermit a full discussion on this and will address that in your closing remarks.

And of course the Bureau of Prisons determines credit for time served, not the Court. That has been made crystal clear by the general counsel for the Bureau of Prisons and the Supreme Court.

The court later discussed the relevance of the pending Jennings charge, expressing uncertainty that the Jennings charge was relevant conduct to the counterfeit-money charge:

In this particular instance, I note that you have state charges that are pending. Your attorney actually tries to relate the counterfeiting to the meth addiction or to the gaming addiction. You are not charged with gaming addiction here or a gaming violation. The plea was to Count 5, and I can't tell whether the state charges are truly related or only partially related to what we're dealing with here.

Under those circumstances, I'm going to allow this sentence to run concurrent with any state sentence that may be imposed, if the state sentence determines that your state charges are related to this federal crime that you pled guilty to today.

Young himself then asked about the significance of a potential dismissal of the pending Jennings charge, asking, "What if that state charge is dismissed altogether because I know it will?" The court responded:

If that [*i.e.*, the Jennings] state charge is dismissed altogether, then this is the only sentence that will be imposed, and it will be up to the Bureau of Prisons to determine credit for time served under the state charges with those charges dismissed. I can't take a position on that one way or the other.

Though I do note that the state charges that were about, I believe, four months, give or take, of claimed credit for time

4

No. 20-30492

served. I have no problem with the Bureau of Prisons should they wish to credit him if those charges are dismissed, but I can't put that in the judgment. Okay?

Young attempted to clarify for the judge that the four months was unrelated to the Jennings charge. He explained that he had already pled guilty to "the four-month sentence," *i.e.*, the Lafayette conviction, and that it was "the 31st Judicial District," *i.e.*, the Jennings charge to which he was then referring. Young told the court that the Jennings case was "still open" because his codefendant was "taking that charge" but that she had not "had a chance to get to court to do it." Young added that his lawyer in Jennings told him that as soon as Young's codefendant did that, "the charges are dropped on me." The court correctly responded that it had no jurisdiction over credit for a sentence that had yet to be imposed:

> And I have no jurisdiction over what the state judge imposes in terms of a sentence. If there is a sentence that's actually imposed, it is that judge that will determine with some degree of finality which sentence is served first. I have placed on the record that it's my desire that the federal sentence be served concurrent with any sentence that the state imposes, and I hope that that remains, but that's a problem between state and federal courts, and I just placed that in the record.

Young then asked if any of his time in custody since June 12, 2019, would be factored into his federal sentence. This question was admittedly unclear as to whether it pertained to the Lafayette conviction or the Jennings charge. The court's response does not make clear whether it understood that Young was inquiring about his state sentence that had already been served: "That I do not know. I can only tell you that the Bureau of Prisons determines credit for time served, Mr. Young. . . . [B]ut I have no jurisdiction to determine whether that sentence or not will be, quote, credit for time served, end quote, for your federal sentence." The court then noted that it

had "ordered that this federal sentence be . . . run concurrently with the state sentence. What the state decides to do, what the Bureau of Prisons decides to do is up to them, not me."

Because of the confusion regarding whether the court's no-jurisdiction response pertained to the Lafayette conviction or the pending Jennings charge, defense counsel sought to clarify with the court: "Your Honor, I do have one question. The [c]ourt is denying the request for the four-month adjustment; is that correct?" The court responded:

> Technically, yes. That's up to the Bureau of Prisons because the Court considers that request to be allowing the Court to give credit for time served. I can't do that. I can run the sentence concurrent provided that state court in its final disposition decides to agree with that. Otherwise the rules state that the state sentence is served first before the federal sentence applies.
>
> The Bureau of Prisons will have my judgment that indicates the federal sentence should be run concurrent. Credit for time served is determined purely by the Bureau of Prisons.

Defense counsel then clarified that his question was about the Lafayette conviction, not the pending Jennings charge:

> What I'd like to raise, Your Honor, is that so the request for the four months is separate from the request for the — *the four-month sentence has already been imposed.* It's my understanding *under 5G1.3(b) the Court could impose a 41-month sentence and then adjust the sentence downward by four months* to give him credit for those four months since that sentence has already been imposed and served.

Still, even after the clarification from defense counsel, the court made the same statement regarding the BOP's authority over the question:

> In this particular instance, I'm denying that because *that will be up to the Bureau of Prisons* to determine how that is to be applied

to this federal sentence because it falls under the heading of credit for time served. *Whether those charges are related or not I can't tell.* Again, I reiterate, it's a Bureau of Prisons problem, not mine. Clear?

Defense counsel asked the court to note his objection.

On appeal, Young again contends that the district court should have considered his four months of imprisonment in state custody pursuant to the Lafayette conviction when sentencing him for his federal conviction. He argues that the district court misunderstood its authority to adjust or downward depart for the four months that Young had already served in state custody and misconstrued his request as one for credit for time served.

## DISCUSSION

Because we conclude that Young preserved the issue of a four-month downward departure, we interpret the Guidelines *de novo* and the factual findings for clear error.[1] *See United States v. Valdez*, 726 F.3d 684, 692 (5th

---

[1] In his sentencing memorandum, Young requested a "downward variant sentence" for the four months based on the Lafayette conviction that Young "will have served . . . in custody" "[w]hen this Court imposes the judgment in this case." At sentencing as well, defense counsel objected on the record to a failure to "adjust the sentence downward to give him credit for those four months since that sentence has already been imposed and served." Young cited U.S.S.G. § 5G1.3(b)(1), which requires an adjustment based on *undischarged* terms of imprisonment. Importantly, the comments to Section 5G1.3 cross-reference Section 5K2.23, which allows a downward departure based on a *discharged* term of imprisonment when Section 5G1.3(b) would otherwise be satisfied. The Government argues that Young's reference only to Section 5G1.3(B)(1) is fatal to his preservation of the issue because Young asserted that the Lafayette conviction sentence was discharged at the time of his federal sentencing. Young concedes, "It is unclear from the record whether Young had discharged the four-month sentence by the time he was sentenced in federal court." Either way, Young sufficiently preserved the issue that the court had authority to take the Lafayette conviction into account when sentencing. *See United States v. Peterson*, 977 F.3d 381, 393 (5th Cir. 2020) (holding that failure to cite a

Cir. 2013); Fᴇᴅ R. Cʀɪᴍ. P. 51(a). "A factual finding is not clearly erroneous if it is plausible in light of the record as a whole," and this court "will find clear error only if a review of the record results in a definite and firm conviction that a mistake has been committed." *United States v. Zuniga*, 720 F.3d 587, 590 (5th Cir. 2013) (quotation marks omitted). Even if we find procedural error, we may still affirm if the error is "harmless — that is, if 'the error did not affect the district court's selection of the sentence imposed.'" *United States v. Robinson*, 741 F.3d 588, 601 (5th Cir. 2014) (quoting *United States v. Delgado-Martinez*, 564 F.3d 750, 753 (5th Cir. 2009)). The Government bears the burden to demonstrate that any error was harmless. *Id.*

It is unclear from the record whether at the time of the federal sentencing, Young's four-month Lafayette sentence had been discharged.[2] The discharge question determines which of Section 5G1.3(b) (for undischarged sentences) or 5K2.23 (for discharged sentences) applies. Which section applies is also relevant to our jurisdiction. Section 5G1.3(b) provides a sentence *adjustment* and must be consulted by the district court in calculating the guidelines range. If Young's sentence was undischarged, our jurisdiction is unquestionable. On the other hand, Section 5K2.23 permits a court to depart downward, which is discretionary. This court does not have

specific guidelines provision did not waive the objection when the objection was "sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction" (quotation marks and citation omitted)). This is especially true given Section 5G1.3(b)'s cross-reference to Section 5K2.23.

[2] Young concedes that the record was unclear at sentencing as to whether the Lafayette sentence was discharged. The Government understood Young's argument to be that the sentence was discharged, but it still argued that "the defendant did not establish that the state offense was discharged."

jurisdiction "to review the district court's refusal to depart downward, unless the district court's refusal was based on a mistaken belief that it lacked the power to depart downward," and such refusal violates the law "only if the court mistakenly assume[d] that it lack[ed] the authority to depart." *United States v. Cooper*, 274 F.3d 230, 248 (5th Cir. 2001) (citation omitted).

If Young's Lafayette sentence was discharged, then a request for the district court to consider it would be a request for a downward departure. Because we have jurisdiction to review a district court's refusal to downward depart only if the district court mistakenly believed it lacked the authority to downwardly depart, we must first assure ourselves of our jurisdiction.

I.    *Was the district court's refusal to consider the four-month imprisonment period based on a misunderstanding of its authority to do so?*

The Government argues that the district court did not misunderstand its authority, as "the sentencing transcript indicates that the court's reference to credit for time served and concurrent sentences applied to a *pending* state charge not to the four-month sentence imposed earlier." This interpretation of the sentencing transcript ignores defense counsel's attempt to clarify that the court was "denying the request for the four-month adjustment," which "has already been imposed and served," *i.e.*, not pending. Defense counsel explicitly referenced U.S.S.G. § 5G1.3(b). The court responded to counsel's clarification question, "I'm denying that because that will be up to the Bureau of Prisons to determine how that is to be applied to this federal sentence. . . . Again, I reiterate, it's a Bureau of Prisons problem, not mine."

It is correct that awarding credit for time served falls to the discretion of the Bureau of Prisons ("BOP") under 18 U.S.C. § 3585, but the court failed to recognize its authority to *adjust* the sentence or *downward depart*, which was the actual request before it. Young did not ask for credit for time

No. 20-30492

served, rather he asked for either an "adjustment" or "downward variant sentence."

The Sentencing Guidelines provide that not all reductions in sentence based on time served are left to the discretion of the BOP. One section provides that when

> a term of imprisonment resulted from another offense that is relevant conduct to the instance offense . . . the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons.

U.S.S.G. § 5G1.3(b), (b)(1). Importantly, the comments to Section 5G1.3 cross-reference Section 5K2.23, which allows a downward departure based on a discharged term of imprisonment when Section 5G1.3(b) would otherwise be satisfied. § 5G1.3(b) cmt. n.5.

The district court refused to resolve whether the requirements of these sections of the Guidelines were met, insisting repeatedly that "the Bureau of Prisons determines credit for time served, not the Court." These provisions expressly apply when the imprisonment period will not be credited by the BOP, such as when the period of imprisonment has been credited to a sentence already. *See* 18 U.S.C. § 3585 ("A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . that has not been credited against another sentence.").

The Government's interpretation of the record that the district court was referring only to a hypothetical sentence from the pending Jennings charge is contrary to the record. We interpret the record as supporting that the district court believed it lacked authority to consider the four months of imprisonment for the federal sentence.

Thus, even if Young's state sentence was not discharged and the district court's refusal to consider the four months imprisonment was a refusal to downward depart, we have jurisdiction because the district court misunderstood its authority to consider the four-month period of imprisonment.

## II.    *Applicability of Sections 5G1.3(b) or 5K2.23 to Young.*

We turn now to the merits. Sections 5G1.3(b) and 5K2.23 both require that for the district court to be able to consider a collateral sentence, the BOP will not award credit for time served for that sentence and that collateral offense must be relevant conduct to the instant offense. Young contends that the BOP would not award credit for the four months served because the requirement under 18 U.S.C. § 3585 that the "term of imprisonment . . . has not been credited against another sentence" is not met for the four months. Specifically, Young asserts that "he had been in continuous custody since [the Jennings arrest on] June 12, 2019" until the date of his federal sentencing — August 3, 2020. Thus, he spent more than 13 months in custody, and on December 2, 2019, the federal district court ordered the Louisiana jail that was holding Young to deliver him to federal custody. His first appearance in federal court was December 12, 2019, and the Jennings charge was dormant during the pendency of his federal case.

Young was sentenced to four months imprisonment for the Lafayette conviction, to which he pled guilty on August 15, 2019. Four of the 13 months, then, are credited to the Lafayette sentence and ineligible for BOP credit. *See* 18 U.S.C. § 3585. A helpful decision from another circuit involved a district court's adjustment of a federal sentence under Section 5G1.3(b) based on the 18 months the defendant served in state prison for a related state sentence for drug and counterfeit convictions. *United States v. Rivers*, 329 F.3d 119, 121 (2d Cir. 2003). As in this case, the government

argued that the district court's assumption that the BOP would not credit the defendant for the time already served in state prison before the federal sentence was "mere speculation." *Id.* at 121 n.1. The Second Circuit correctly rejected that argument, noting that the defendant could "not be credited by the BOP for the time served under the state sentence because that time has already been 'credited against another sentence' — specifically, the state drug and counterfeit sentences." *Id.* (quoting 18 U.S.C. § 3585(b)).

It is any remaining time in state custody, which at Young's federal sentencing had not yet been credited to any sentence, that is too "speculative" to assume cannot be credited by the BOP. *See United States v. Aparicio*, 963 F.3d 470, 478 (5th Cir. 2020). In *Aparicio*, this court affirmed the district court's decision not to adjust the defendant's sentence based on time already spent in state custody for a related state offense. *Id.* at 476. Importantly, the state charges remained pending during federal sentencing. *Id.* The defendant asked the district court to adjust his sentence under Section 5G1.3(b) for the amount of time already spent in custody because that time would likely be credited to his state sentence when it was imposed and thus, he argued, Section 5G1.3(b) was met. *Id.* This court disagreed, finding the defendant's argument "based on his premature and speculative assertion that he will not receive credit for his detention prior to the imposition of his federal sentence" for the state sentence *not yet imposed*. *Id.* at 478. Thus, it was "not yet known how the BOP [would] calculate [the defendant's] sentence and to what extent he [would] receive credit for time served." *Id.*

The Government's reliance on *Aparicio*, as it relates to the four months imprisonment already imposed and served, is misplaced. It is not speculative that four of the months served is credited to the four-month Lafayette sentence. *Aparicio* clarifies that the remaining months in custody, which cannot yet be credited to the pending Jennings charge, cannot be the

basis of a Section 5G1.3(b) adjustment. *Id.* at 478. That is not what Young asks.

The remaining question then, is whether the four months imprisonment for the state methamphetamine conviction "resulted from another offense that is relevant conduct to the instant offense," *i.e.*, the counterfeit-money offense. *See* U.S.S.G. §§ 5G1.3(b), 5K2.23. Young argued to the district court that the "drug offense is a part of the [counterfeit-money] offense conduct because he was creating the counterfeit bills in order to purchase the methamphetamine in question."

The district court made no factual findings as to the relatedness of the offense, noting instead, "Whether those charges are related or not I can't tell." Because we have no factual findings before us to review for clear error, we remand to the district court to determine this question. The district court will also need to determine whether Young's Lafayette sentence is discharged, as that will direct whether Section 5G1.3(b) or 5K2.23 applies.

## III. *Harmlessness*

The Government asserts that any error was harmless because the record was not clear as to whether the Lafayette conviction was discharged and that conviction was not relevant conduct to the instant offense. It offers no evidence that the court would have imposed the same sentence had it understood its authority to consider the four months in state custody. *See Robinson*, 741 F.3d at 601–02. To the contrary, the district court repeatedly stated sentiments such as, "I have placed on the record that it's my desire that the federal sentence be served concurrent with any sentence that the state imposes, and I hope that that remains." Again, though, this seemed to be a reference to the pending Jennings charge.

As to the question of whether the Lafayette sentence was discharged, we do not find that it is particularly relevant to our inquiry. The discharge

question determines which section of the Guidelines applies and how much discretion the district court has when applying the section. It does not mean the district court lacked authority to consider the four-month period in custody. We agree with Young that the discharge question answers "under which [section] the district court proceeds on the request, not eligibility."

The Government also argues in the alternative that the drug-possession conviction is not relevant conduct to the counterfeit-money offense. "The district court's determination of what constitutes relevant conduct for sentencing purposes is a factual finding." *United States v. Nevels*, 160 F.3d 226, 229 (5th Cir. 1998). Again, the district court made no finding on whether the Lafayette conviction conduct was relevant conduct for his federal conviction. Young presented argument to the district court and here that the Lafayette conviction is relevant conduct to the instant offense. Without such factual findings, we are not persuaded that any error in failing to consider the four-month sentence was harmless.

Because the district court did not consider Sections 5G1.3(b) or 5K2.23 and apparently misunderstood its authority to do so, we VACATE Young's sentence and REMAND to the district court for consideration of those sections and the factual determinations relevant to them.