**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 19, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

CHARLEY COLLAMORE,

      Defendant-Appellant.

No. 08-6152
(D.Ct. No. 5:07-CR-00212-HE-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]

Before **BARRETT, ANDERSON,** and **BRORBY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

A jury convicted Defendant-Appellant Charley Collamore of using a

communication facility to facilitate distribution of methamphetamine, in violation

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

of 21 U.S.C. § 843(b) (Count 1); two counts of distributing methamphetamine, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1) (Counts 2 and 3); and one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (Count 4). The district court sentenced him at the low end of the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range to 151 months imprisonment on Counts 2, 3, and 4 and forty-eight months imprisonment on Count 1, to be served concurrently. He now appeals his drug-related convictions and sentences on grounds the district court erred in: (1) denying his motion to suppress evidence discovered during a vehicle search involving Count 4; (2) denying his request to instruct the jury on the lesser included offense of simple possession for Counts 2 and 3; and (3) calculating his sentences by using other drug-related conduct and actual methamphetamine quantities. We exercise jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291 and affirm Mr. Collamore's convictions and sentences.

## I. Factual Background

### A. Facts Regarding Counts 1, 2, and 3 Regarding Use of Communication Facility and Distribution of Controlled Substance

Federal, state, and local law enforcement agencies conducted an investigation into the activities of a man known as "Postman" or "Chuck" whom enforcement officials suspected of being a major distributor of methamphetamine

and whom they later identified as Mr. Collamore.  At the time of the investigation,

the United States Postal Service (Postal Service) employed Mr. Collamore as a

mail carrier at the Midwest City, Oklahoma branch.  During the investigation into

Mr. Collamore's methamphetamine activities, Brad Gaylord, an investigator with

the district attorney's office acting in an undercover capacity, together with a

confidential informant, made two methamphetamine purchases from Mr.

Collamore.  The first purchase occurred on January 11, 2007, when Investigator

Gaylord purchased 54.8 grams of a methamphetamine substance from Mr.

Collamore and another individual, Donnie Hellyer.  As part of that transaction,

Mr. Collamore used a telephone as a means to contact the confidential informant

to give the location for the purchase.  The second purchase occurred on March 14,

2007, when Investigator Gaylord purchased 54.9 grams of a methamphetamine

substance from Mr. Collamore.  Authorities did not arrest or indict Mr. Collamore

for these offenses until he committed another drug-related offense on August 2,

2007, described as follows.

### B.  Facts Regarding Count 4 for Possession
### with Intent to Distribute a Controlled Substance

On August 2, 2007, around 5:00 p.m., Mr. Collamore called his supervisor,

Raymond "Mike" Klish, stating he was unable to complete his mail route.  Mr.

Collamore's speech was slurred, he seemed disoriented, and he could not explain

the problem, state why he could not fulfill his job duties, or provide his exact location. Mr. Klish and three other Postal Service employees immediately went to look for Mr. Collamore and found him in his Postal Service vehicle slumped in a seated position while the vehicle was parked and running. On examination, his skin tone did not look good and he was "clammy and his pupils were restricted."

Due to his physical appearance, Mr. Klish believed Mr. Collamore incapable of driving and also suspected the influence of drugs. Mr. Klish first transported Mr. Collamore to the Midwest City Post Office. After conferring with his supervisor, Virgil Cosma, Mr. Klish took Mr. Collamore to a medical facility for a "fitness-for-duty" examination, which the Postal Service conducts for the purpose of determining whether employees possess physical ailments preventing them from performing their duties in a proper and safe manner. Mr. Collamore agreed to the fitness-for-duty evaluation, but told Mr. Klish he would not take a drug examination as a part of the evaluation. Mr. Cosma met them at the facility, and Mr. Collamore filled out a release of medical information form.

Shortly after Mr. Collamore's arrival at the medical facility, David Hill, a special agent with the Postal Inspector General's Office, arrived to investigate possible misconduct involving narcotics use and/or possession, which are both criminal and administrative violations of Postal Service rules. Following Mr.

Collamore's examination, the physician's assistant who conducted the examination advised Agent Hill and Mr. Cosma that Mr. Collamore exhibited extremely high blood pressure, a rapid pulse, and other symptoms consistent with being under the influence of some type of substance, and he had refused a drug screening test.

Agent Hill then advised Mr. Collamore: (1) of his suspected narcotics use; and (2) that personal vehicles and containers on postal property are subject to inspection and search pursuant to Postal Service policy. The policy to which Agent Hill referred states:

> *Vehicles and their contents brought into, while on, or being removed from restricted nonpublic areas are subject to inspection.* Persons entering these areas who object and refuse to consent to the inspection of the vehicle, its contents, or both, may be denied entry. *After entering the area without objection, consent to inspection shall be implied.* A full search of the person and the vehicle driven or occupied by that person may accompany an arrest.

R., Vol. 1, Doc. 55 (Ex. 2) (emphasis added). A copy of this policy was posted at various locations around the Postal Service facility where Mr. Collamore worked, including on the back door through which most employees passed, near the time clock where employees punched in and out of work each day, on the bulletin board near the employee break room, and in a glass wall container in the lobby.

When Agent Hill advised Mr. Collamore his personal vehicle was subject to an inspection according to Postal Service policy, Mr. Collamore stated he was

aware of the policy but asked if he could "drive away, never to be seen again." Agent Hill replied that they would search his postal vehicle, postal satchel, and personal vehicle. He then asked Mr. Collamore for the keys to his personal vehicle, which Mr. Collamore gave him.

Mr. Collamore, a Midwest City police officer, Mr. Cosma, Mr. Klish, and another Postal Service supervisor were present when Agent Hill searched Mr. Collamore's personal vehicle, which Mr. Collamore had parked in the restricted nonpublic area of the Postal Service facility. Using the keys given to him by Mr. Collamore, Agent Hill accessed the vehicle and saw two Ziploc bags containing drug residue on the front passenger-side floorboard, which he had also viewed through the window. Agent Hill also found a black zipper bag protruding from the driver's seat in which he discovered two Ziploc bags containing 4.3 grams of methamphetamine and four tablets of hydrocodone, as well as various drug paraphernalia, including a digital scale, a spoon, rubber bands, and a Postal Service "Last Chance" agreement form signed by Mr. Collamore. Agent Hill also found a glass pipe wrapped in tissue paper under the driver's seat.

C. Indictment, Bond Violation, and Additional Conduct

Authorities charged Mr. Collamore with Count 1 for using a communication facility to facilitate distribution of methamphetamine, in violation of 21 U.S.C.

§ 843(b), when, on January 11, 2007, he used a telephone to facilitate the distribution of methamphetamine to Investigator Gaylord; Count 2 for distributing methamphetamine, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1), when he sold methamphetamine to Investigator Gaylord on January 11, 2007; Count 3 for distributing methamphetamine, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1), when he sold methamphetamine to Investigator Gaylord on March 14, 2007; and Count 4 for possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), when, on August 2, 2007, Agent Hill found methamphetamine, hydrocodone tablets, and other drug paraphernalia in Mr. Collamore's personal vehicle. Following the multiple-count indictment against him, authorities released Mr. Collamore on a personal recognizance bond subject to pretrial services supervision and additional conditions of release.

Authorities later learned from a confidential source that during the time Mr. Collamore was released on bond he participated in a narcotics transaction on November 27, 2007, in which he provided a bag containing 9.6 grams of methamphetamine to the confidential source. In addition, the investigation into Mr. Collamore's activities also resulted in information he sold at least one pound, or 453.6 grams, of methamphetamine to Lacy Ott sometime between 2003 and 2004; 2.5 grams of methamphetamine to Eric Chauvaux during the summer of 2005, which another person, Ryan Rider, witnessed; and a total of 121 grams to

Mr. Rider on three separate occasions, including the summer of 2005, January 2006 to mid-August 2007, and between September and December 2007.

## II. Procedural Background and Discussion

### A. Motion to Suppress

Prior to trial, Mr. Collamore filed a pretrial motion to suppress the evidence obtained from his vehicle on grounds his consent to release medical information was involuntary.[1] In addition, "[a]s a separate proposition" in his motion to suppress, Mr. Collamore contended Postal Service policy did not authorize the warrantless search of his private vehicle because it failed to "define the limits of an inspection" and authorized a search "only if a person is arrested." R., Vol. 1, Doc. 53 at 22.

The district court held a hearing on Mr. Collamore's motion to suppress, at which both Mr. Klish and Agent Hill testified as to the circumstances surrounding the search. Following the hearing, the district court denied the motion to suppress,

---

[1] Mr. Collamore asserted his consent in signing the release was unknowing and involuntary due to his physical incapacitation and, therefore, could not be used to justify the search of his personal vehicle on August 2, 2007. In making this claim, he suggested the government bore the burden of proving: (1) his consent to release his medical information was unequivocally, specifically, and freely given; and (2) a reasonable person in Mr. Collamore's situation would have understood the scope of that consent. Mr. Collamore does not raise this issue on appeal.

finding "the defendant gave implied consent to have his vehicle inspected by parking it in a restricted, nonpublic area on [P]ostal [S]ervice property."  R., Vol. 1, Doc. 58 at 39.  It explained that while the Postal Service policy did not define the term "inspection," its explicit reference to inspection of "vehicles and their contents" made it apparent the term encompassed "the limited search conducted" by Agent Hill, who looked into the vehicle and saw two Ziploc bags with residue on the floor and then removed the black zipper bag and pipe without dismantling the vehicle or engaging in an intensive search.  *Id.* at 40.

It also held that even if Mr. Collamore did not impliedly consent to the vehicle search by parking it in the restricted, nonpublic area on Postal Service property, "the search was valid as a search conducted by a public employer as part of an investigation of work-related misconduct."  *Id.*  Relying on *O'Connor v. Ortega*, 480 U.S. 709, 724-25 (1987), it explained public employers have an interest in ensuring the effective and efficient operation of their agencies without work-related misfeasance of their employees, and therefore, the employees' legitimate expectations of privacy must be balanced against the public employers' interests.

On appeal, Mr. Collamore continues to argue the search of his private vehicle was unconstitutional in violation of the Fourth Amendment.  However, in

support, Mr. Collamore claims for the first time on appeal that he did not give implied consent to search his car when he parked it in the Postal Service facility parking lot because the government failed to prove he would be "aware" that the "scope of actions authorized under [the Postal Service's inspection] policy" extended to "opening the door of the vehicle, entering the vehicle, looking under the seats or in closed compartments, or opening containers inside the vehicle." Apt. Br. at 17-18, 22. This argument is different than his argument before the district court that the Postal Service policy failed to define the limits of an inspection.[2] Because it was not specifically raised, the district court did not address the issue of whether the government proved Mr. Collamore was aware of the scope of the inspection conducted pursuant to Postal Service policy.

Generally, when considering the denial of a motion to suppress evidence:

[W]e consider the totality of the circumstances and view the evidence in a light most favorable to the government. We accept the district court's factual findings unless those findings are clearly erroneous. The credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court. Keeping in mind that the burden is on the defendant to prove that the challenged search was illegal under the Fourth Amendment, the ultimate determination of reasonableness under the Fourth Amendment is a question of law reviewable de novo.

---

[2] This argument is also substantially different than Mr. Collamore's argument that the government must prove a reasonable person in Mr. Collamore's situation would have understood the scope of his consent to release his medical information.

-10-

*United States v. Higgins*, 282 F.3d 1261, 1269-70 (10ᵗʰ Cir. 2002) (quotation marks and citation omitted). In reviewing the district court's ruling on a motion to dismiss, "we may affirm on any grounds supported by the record." *United States v. White*, 326 F.3d 1135, 1138 (10ᵗʰ Cir. 2003) (quotation marks and citation omitted).

While this is the standard of review we generally apply to motions to dismiss, as previously mentioned, Mr. Collamore raises a different argument in support of his motion to dismiss than the one he presented to the district court. Motions to suppress evidence under Rule 12 of the Federal Rules of Criminal Procedure must be made prior to trial, and failure to make the motion prior to trial, *or to include a specific argument in that motion*, is considered "waiver" of the alleged error for which relief may be granted "for good cause shown." *See United States v. Smith*, 131 F.3d 1392, 1397 (10ᵗʰ Cir. 1997) (relying on Fed. R. Crim. P. 12(b)(3) and (f) (now subsection (e))). In *Smith*, after determining the defendants waived a newly raised suppression issue by failing to show cause why they failed to raise it before the district court, we nevertheless reviewed that issue for plain error.[3] *Id.* Plain error is (1) an error (2) that is plain (3) affecting a defendant's

---

[3] While the terms forfeiture and waiver are sometimes used interchangeably, we have clarified that forfeiture arises from neglect for which plain error review is appropriate, while waiver occurs "where a party has invited the error that it now seeks to challenge, or where a party attempts to reassert an

(continued...)

-11-

substantial rights and (4) seriously affecting the fairness, integrity, or public reputation of judicial proceedings. *See id.* Clearly, in this case, Mr. Collamore has not shown cause as to why he failed to previously bring his newly raised suppression argument. However, even if we review Mr. Collamore's argument, under either a clear error or plain error standard it must fail.

In making this determination, we rely on the legal principles involved in warrantless searches as they apply under the circumstances. While the Fourth Amendment prohibits unreasonable searches and seizures, a warrantless search may be reasonable if it fits within the established consensual search exception to the warrant requirement. *See Florida v. Jimeno*, 500 U.S. 248, 250 (1991). A consensual search must be freely and voluntarily given. *See United States v. Patten*, 183 F.3d 1190, 1194 (10th Cir. 1999). Whether the consent given is voluntary is a question of fact to be determined from the totality of the circumstances. *See id.* In determining the scope of a defendant's consent, we ask what a reasonable person would have understood under the circumstances

---

[3](...continued)
argument that it previously raised and abandoned below." *United States v. Zubia-Torres*, 550 F.3d 1202, 1205 & n.1 (10th Cir. 2008), *cert. denied*, ___ S. Ct. ___, 2009 WL 789430 (Apr. 20, 2009) (No. 08-9389). In *Zubia-Torres*, this court announced we will treat all cases in which the court reviews for plain error as cases of forfeiture, even if the opinion uses the term "waiver." *See id.* at n.1. In this case, the record suggests the argument now asserted occurred through forfeiture, rather than waiver, as it does not involve an invited error or abandoned issue. *See id.*

presented. *See id.* While consent to search must be freely and voluntarily given, in some instances, "[a] defendant's silence and acquiescence may support a finding of voluntary consent." *Id.* "Moreover, a defendant's failure to object when the search exceeds what he later claims was [a] more limited consent, is an indication the search was within the scope of consent." *Id.* (quotation marks and citation omitted). Applying these principles, we held in *Patten* that a defendant gave valid implied consent to search inside a suitcase when he silently and without objection unzipped his suitcase after an officer asked, "Well, do you think we could take a look at your suitcase there? I don't want to necessarily look in it." *Id.* at 1194-95.

In *United States v. Verdin-Garcia*, we examined whether a defendant, by using the prison telephone, gave silent but implied consent to the monitoring or recording of such a call when: (1) signs posted next to the telephones announced "[a]ll calls may be recorded/monitored"; (2) the recorded message preceding all outgoing inmate telephone calls warned all calls were subject to monitoring and recording; and (3) all new inmates received handbooks providing prison policy explaining all telephone calls were subject to monitoring and recording. 516 F.3d 884, 894 (10th Cir.), *cert. denied,* 129 S. Ct. 161 (2008). In that case, we held it unnecessary for the defendant to expressly give consent to such monitoring because his use of the telephone sufficed to imply his consent. *Id.* at 894-95.

-13-

Similarly, in this case, the Postal Service policy at issue stated vehicles and their contents located in restricted, nonpublic areas of Postal Service property were subject to inspection and that after entering the area without objection, "consent to inspection shall be implied." Evidence at the suppression hearing established a copy of this policy was posted at various locations around the Postal Service facility where Mr. Collamore worked, including on the back door through which most employees passed; near the time clock where employees punched in and out of work each day; on the bulletin board near the employee break room; and in a glass wall container in the lobby. Given these circumstances, it is unlikely a reasonable person reading these warnings would have an expectation of privacy with regard to his vehicle and its contents when he parked on such property or that he would not understand parking on such property provided implied consent to such an inspection.

In addition, when Agent Hill told Mr. Collamore his personal vehicle was subject to inspection pursuant to Postal Service policy, Mr. Collamore expressly and unequivocally stated he was aware of the policy. At that time Mr. Collamore also asked if he could drive away, never to be seen again, indicating he was aware the scope of the inspection would involve more than merely an examination of the outside of his vehicle. Moreover, after Agent Hill asked for his keys, Mr. Collamore, like the defendant in *Patten*, silently and without objection handed

-14-

over the keys to his vehicle, evidencing not only his implied consent to Agent Hill's examination of the inside of the vehicle, but his understanding an inspection under Postal Service policy would involve using the key to open the door to look inside. Finally, Mr. Collamore was present when Agent Hill searched his vehicle and never objected when the search entailed what he later claimed went beyond the scope of his consent. *See Patten*, 183 F.3d at 1194.

For these reasons, it is clear Mr. Collamore has not carried his burden of establishing the district court committed any error, clear or plain, in denying his motion to suppress. Given our conclusion Mr. Collamore consented to the search of his vehicle, we need not address his additional argument on whether the search was valid as part of an investigation into work-related misconduct, other than to agree with the district court as to its validity for the same reasons cited by it in denying the motion to suppress.

## B. Trial and Jury Instructions

Prior to trial, Mr. Collamore sought a jury instruction for the lesser included offense of simple possession of methamphetamine for Counts 2, 3, and 4. The district court denied the use of the lesser included offense instruction on Counts 2 and 3, regarding Mr. Collamore's distribution of methamphetamine charges, stating that the lesser included offense instruction was not appropriate with respect

to those distribution counts, but allowed the instruction with regard to Count 4 for the charge of possession of methamphetamine with intent to distribute. The lesser included offense instruction advised the jury that if it unanimously found the defendant not guilty of Count 4, or, if it was unable to agree on Mr. Collamore's guilt with respect to that offense, then it must determine if he was guilty or not guilty of the lesser included offense of simple possession of methamphetamine, requiring the government to prove beyond a reasonable doubt that he knowingly and intentionally possessed methamphetamine on or about August 2, 2007. Unlike the jury instruction for Count 4 for possession with intent to distribute, it did not require the government to prove Mr. Collamore intended to distribute the methamphetamine he possessed.

At trial, the government presented the testimony of Investigator Gaylord, Agent Hill, Mr. Hellyer, Mr. Klish, and several others. Mr. Collamore did not testify. The jury found Mr. Collamore guilty on all counts, including Count 4 for possession of methamphetamine with intent to distribute, so the jury did not apply the simple possession instruction.

On appeal, Mr. Collamore contends the district court erred in not instructing the jury as to the lesser included simple possession instruction with respect to Counts 2 and 3 regarding his distribution of methamphetamine charges. While he

concedes this court's "authority provides that simple possession of a controlled substance is not a lesser included offense of distribution of a controlled substance," he claims our prior precedent should not apply because he was a "conduit for the buyer and seller" and that he "was merely helping a friend." Apt. Br. at 18, 28.

We review de novo whether the offense on which the instruction is sought is a lesser included offense for the crime charged, but we review a district court's determination of whether the evidence justifies the inclusion of a lesser included offense instruction for an abuse of discretion. *See United States v. Humphrey*, 208 F.3d 1190, 1206 (10th Cir. 2000). This court has clearly held a distinct difference exists between distribution and possession charges so that "simple possession is not a lesser included offense of [a] distribution [charge] ...." *United States v. Jackson*, 213 F.3d 1269, 1297 (10th Cir.), *cert. granted and judgment vacated on other grounds*, 531 U.S. 1033 (2000).

In this case, our holding in *Jackson* applies, so that Mr. Collamore's argument is precluded by this circuit's precedent as a matter of law. Moreover, overwhelming, uncontradicted evidence established Mr. Collamore distributed methamphetamine to Investigator Gaylord on January 11, 2007, in conjunction with Count 2; and again on March 14, 2007, in conjunction with Count 3. Thus, a

lesser included offense instruction regarding simple possession would have been inapplicable under the circumstances presented.  In addition, nothing in the record supports Mr. Collamore's argument he acted merely as a conduit for a buyer and seller and was helping a friend; nor has he presented any meaningful legal argument as to why such a set of circumstances would change our application of *Jackson* to his case.  For these reasons, we conclude the district court clearly did not abuse its discretion in declining to instruct the jury as to the lesser included offense of simple possession on Counts 2 and 3.

### C.  Sentencing

In convicting Mr. Collamore on all counts, the jury also found him guilty of distributing fifty grams or more of methamphetamine for both Counts 2 and 3. Following Mr. Collamore's conviction, a federal probation officer prepared a presentence report in conjunction with the 2007 Guidelines to determine his recommended sentence.  In calculating the amount of controlled substance for which Mr. Collamore was accountable, the probation officer noted a lab analyzed the methamphetamine substances involved in the distribution offenses for Counts 2 and 3 and reduced them into actual grams of methamphetamine, so that 54.8 grams of a methamphetamine substance consisted of 21.25 grams of actual methamphetamine for the January 11, 2007 offense; and 54.9 grams of a methamphetamine substance consisted of 29.27 grams of actual methamphetamine

for the March 14, 2007 offense.  Clearly, the probation officer applied the weight of the actual methamphetamine because it provided a greater offense level than application of the mixture weight.[4]  *See* U.S.S.G. § 2D1.1 (Drug Quantity Tbl. note (B)) (2007).  Next, pursuant to U.S.S.G. § 2D1.1 cmt. n.10, the probation officer converted all of the relevant conduct controlled substances into a marijuana equivalent in order to obtain a single offense level, holding Mr. Collamore accountable for the following drug amounts as converted:

| Date | Source | Drug Amount | Marijuana Equivalent |
|---|---|---|---|
| 01/11/07 | Undercover buy | 21.25 grams of actual methamphetamine | 425 kilograms |
| 03/14/07 | Undercover buy | 29.27 grams of actual methamphetamine | 585.4 kilograms |
| 08/02/07 | Search of vehicle | 4.3 grams of mixture or substance | 8.6 kilograms |
| 08/02/07 | Search of vehicle | 4 tablets of hydrocodone | .0004 kilograms |
| 2003-2004 | Lacy Ott | 453.6 grams of mixture or substance | 907.2 kilograms |
| 11/27/07 | Confidential source | 9.6 grams of mixture or substance | 19.2 kilograms |
| Summer 2005 | Chauvaux | 2.5 grams of mixture or substance | 5 kilograms |

---

[4]  Pursuant to § 2D1.1(c), 50.52 grams of actual methamphetamine results in an offense level of 32, while 109.7 grams of a methamphetamine mixture results in an offense level of 26.  *See* U.S.S.G. § 2D1.1(c)(4) and (7) (2007).

| Summer 2005 | Rider | 18 grams of mixture or substance | 36 kilograms |
|---|---|---|---|
| 1/06 to mid-August 2007 | Rider | 102.5 grams of mixture or substance | 205 kilograms |
| Between 9/07 and 12/07 | Rider | .5 grams of mixture or substance | 1 kilogram |
| **TOTAL** | | | **2,192.4 kilograms** |

R, Vol. 6 at 7-8 (¶ 21). Based on the total amount of 2,192.4 kilograms marijuana equivalency, the probation officer calculated Mr. Collamore's base offense level, pursuant to § 2D1.1, at 32. *See* U.S.S.G. § 2D1.1(c)(4) (2007) (providing for a base offense level of 32 if the offense involved "[a]t least 1,000 KG but less than 3,000 KG of Marihuana"). The probation officer also determined no adjustments applied, resulting in a total offense level of 32. The probation officer then determined Mr. Collamore's criminal convictions resulted in a subtotal of two criminal history points, but because he committed the instant offense while on probation imposed in two other cases, two additional points were added, for a total of four criminal history points, establishing a criminal history category of III. *See* U.S.S.G. Ch. 5, Pt. A (2007) (indicating four criminal history points establishes a criminal history category of III). Mr. Collamore's criminal history category of III, together with his total offense level of 32, resulted in a Guidelines range of 151 to 188 months imprisonment.

Mr. Collamore filed objections to the presentence report, including an

objection to conversion of the methamphetamine substances into actual

methamphetamine for the distribution offenses under Counts 2 and 3, and the use

of drug quantities associated with his relevant conduct, rather than just the

quantities associated with the instant offenses. At the sentencing hearing, Mr.

Collamore continued his objections to the use of the actual methamphetamine and

relevant conduct drug quantities used to calculate his sentence, which the district

court overruled as a matter of law. The government then presented witness

testimony in support of the actual and relevant conduct drug quantities used in

calculating his sentence, including the testimony of Ryan Rider and Lacy Ott. The

district court found the witnesses to be "generally credible" for the purpose of

applying the actual and relevant conduct drug quantities but excluded for lack of

credible evidence the 9.6 grams of methamphetamine from the November 27, 2007

transaction Mr. Collamore committed while out on bond. As a result, the district

court based Mr. Collamore's sentence on a total marijuana equivalency of 2,173.2

kilograms, rather than the 2,192.4 kilograms recommended in the presentence

report. The district court then imposed sentences at the low end of the applicable

Guidelines range of 151 months incarceration for Counts 2, 3, and 4 and forty-

eight months incarceration for Count 1, to be served concurrently.

On appeal, Mr. Collamore continues to challenge the use of the actual

methamphetamine and relevant conduct drug quantities. In support, he asserts his

sentence violates his Fifth Amendment right to due process and his Sixth Amendment right to have the facts legally essential to punishment be determined by a fact-finder other than the district court.

We review sentences for reasonableness. *See United States v. Smart*, 518 F.3d 800, 803 (10th Cir. 2008). "Our appellate review for reasonableness includes both a procedural component, encompassing the method by which a sentence was calculated, as well as a substantive component, which relates to the length of the resulting sentence." *Id.* In determining whether the district court properly applied the Guidelines in calculating the sentence, we generally review its legal conclusions de novo and its factual findings for clear error, *see United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006) (*per curiam*), including its determination of the quantity of drugs for which the defendant is held accountable under the Guidelines. *See United States v. Todd*, 515 F.3d 1128, 1135 (10th Cir. 2008). "Drug quantities employed by the district court to calculate the applicable Guidelines range may be said to be clearly erroneous only when the district court's finding was without factual support in the record or we are left with the definite and firm conviction that a mistake has been made." *Id.* (quotation marks and citation omitted).

We have held the Supreme Court's holding in *Booker* does not prohibit the

district court from making the same factual findings and applying the same enhancements and adjustments to a defendant's sentence as it did before *Booker*, as long as it does not apply the Guidelines in a mandatory fashion. *See United States v. Lawrence*, 405 F.3d 888, 907 (10th Cir. 2005). "[W]hen a district court makes a determination of sentencing facts by a preponderance test under the now-advisory Guidelines, it is not bound by jury determinations reached through application of the more onerous reasonable doubt standard." *United States v. Magallanez*, 408 F.3d 672, 685 (10th Cir. 2005).

With specific regard to relevant conduct drug quantities, "[i]n the aftermath of *Booker*, we have routinely permitted a district court to enhance a defendant's sentence using uncharged conduct proven to the court by a preponderance of the evidence." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1131 (10th Cir. 2006). In *United States v. Rines*, we rejected an argument the Fifth Amendment forbids using judicial fact-finding regarding relevant conduct to increase a sentence under an advisory Guidelines scheme. 419 F.3d 1104, 1106-07 (10th Cir. 2005). Similarly, in that case and *United States v. Bush*, we explicitly held no Sixth Amendment violation occurs from a judicial determination of the relevant conduct quantity of drugs. *See id.*; 405 F.3d 909, 923 (10th Cir. 2005). These constitutional determinations would likewise apply to the application of U.S.S.G. § 2D1.1, which advises the district court to use whichever drug quantity

calculation; i.e., actual or mixture, which results in the higher offense level.  *See*

*United States v. Decker*, 55 F.3d 1509, 1513 (10th Cir. 1995).

Based on application of the foregoing legal principles, we conclude the

district court did not err or otherwise violate Mr. Collamore's constitutional rights

in factually determining the actual and relevant conduct drug quantities.  The

government submitted witness testimony at the sentencing hearing in support of

those quantities which the district court deemed credible.  It then calculated the

actual and relevant conduct drug quantities under the applicable, advisory

Guidelines, using the acceptable preponderance of the evidence standard.  Because

those quantities have factual support in the record, they are not clearly erroneous

nor do they otherwise leave us with a definite and firm conviction that a mistake

was made.  Having determined Mr. Collamore's sentence is within the correctly-

calculated Guidelines range, we may apply a presumption of substantive

reasonableness to his sentence, which he has not rebutted for the purpose of

demonstrating his sentence is unreasonable under the § 3553(a) factors.[5]  For these

---

[5]  "A challenge to the sufficiency of the § 3553(a) justifications relied on by the district court implicates the substantive reasonableness of the resulting sentence."  *Smart*, 518 F.3d at 804.  If the sentence is within the correctly-calculated Guidelines range, we may apply a presumption of reasonableness.  *See Kristl*, 437 F.3d at 1054-55.  The defendant or the government may rebut this presumption by demonstrating the sentence is unreasonable when viewed under the § 3553(a) factors.  *See id.*

reasons, we conclude the district court did not err in imposing Mr. Collamore's sentences at the low end of the Guidelines range to 151 months incarceration for Counts 2, 3, and 4 and forty-eight months incarceration for Count 1, to be served concurrently.

## III. Conclusion

For these reasons, we **AFFIRM** Mr. Collamore's convictions and sentences.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge