## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-50813

United States Court of Appeals
Fifth Circuit

**FILED**

June 29, 2020

**Lyle W. Cayce**
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

KEVIN RENE APARICIO-LEON,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before SMITH, HIGGINSON, and ENGELHARDT, Circuit Judges.

KURT D. ENGELHARDT, Circuit Judge:

Kevin Rene Aparicio-Leon pleaded guilty to possession with intent to distribute at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii). The district court sentenced Aparicio to a within guideline sentence of 165 months of imprisonment and five years of supervised release. Aparicio appeals his sentence. We AFFIRM.

I.

Aparicio raises two arguments for the first time on appeal. First, he asserts that his due process rights were violated because he was sentenced for an offense for which he was not charged. Specifically, Aparicio complains that

No. 19-50813

he was charged with and pled guilty to possession with intent to distribute a mixture or substance containing methamphetamine, but he was sentenced for possession with intent to distribute "ice." Second, he contends that the district court procedurally erred in failing to adjust his sentence to account for time he spent in custody prior to sentencing that will not be credited to his federal sentence by the Bureau of Prisons (BOP). We address both arguments in turn.

II.

Because Aparicio did not raise these issues in the district court, we review for plain error only.[1] *See United States v. Sanchez-Hernandez*, 931 F.3d 408, 410 (5th Cir. 2019); *United States v. Herrera-Munoz*, 622 F. App'x 442, 442 (5th Cir. 2015). To prevail on plain-error review, Aparicio must show (1) an error that has not been affirmatively waived, (2) that is clear or obvious, and (3) that affected his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009). If he can satisfy these three conditions, this court has the discretion to correct the error and should do so only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1905 (2018).

---

[1] Aparicio concedes that review of the first issue is for plain error. He argues, however, that the second issue was preserved. We disagree. The central focus of Aparicio's objection before the district court was requesting that Aparicio's federal sentence run concurrent to any future, related state sentence, which the court ordered. The district judge, rather than the defendant, initiated the discussion about potential credit for the time Aparicio spent in custody prior to sentencing. A colloquy between the court, defense counsel, and the AUSA ensued. Defense counsel did not directly challenge the court's resolution of the custody credit issue, nor did he seek any further clarification. Instead, he merely stated he was "just not so certain" that BOP would give Aparicio credit for time served, slightly undermining—but, again, not directly challenging—the district court's assumption that BOP would do so. Because Aparicio did not alert the district court to the error of which he now complains, our review of the unpreserved issue is for plain error. *See United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009); *see also United States v. Rocha*, 732 F. App'x 291, 294 (5th Cir. 2018) (plain error review of supervised release condition where "the gist of the exchange would lead the district judge to think that Rocha's attorney agreed with her, and Rocha's attorney did not make any further objections").

No. 19-50813

III.

First, Aparicio challenges the district court's reliance on § 2D1.1 of the Sentencing Guidelines and characterization of the methamphetamine as "ice," in calculating his base offense level of 34. Aparicio argues that this classification is inconsistent with the indictment, which charged him with possession with intent to distribute at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance. Instead, he argues that if the calculation was based on the methamphetamine mixture, his offense level would have been 30, reducing his advisory guideline range.[2]

Aparicio's first argument is without merit. Under the Sentencing Guidelines, a defendant convicted under 21 U.S.C. § 841(a) is generally sentenced based on the Drug Quantity Table in U.S.S.G. § 2D1.1(c). *See* U.S.S.G. § 2D1.1(a)(5), (c); *see also United States v. Lee*, 725 F.3d 1159, 1165 (9th Cir. 2013). For methamphetamine, the base offense level is determined by the weight and purity of the controlled substance. *See Lee*, 725 F.3d at 1166. The Table lists various qualities of methamphetamine—"methamphetamine," "methamphetamine (actual)," and "ice." *See generally* U.S.S.G. § 2D1.1(c). According to the Drug Quantity Table, "at least 500 G but less than 1.5 KG of 'Ice'" results in a base offense level of 34. U.S.S.G. § 2D1.1(a)(5),(c)(3).

The district court did not err in applying § 2D1.1(a)(5),(c)(3) of the Drug Quantity Table to calculate Aparicio's sentencing guideline range based on the purity of the methamphetamine he had in his possession. For the purposes of this guideline, "ice" means "a mixture or substance containing d-

---

[2] The district court determined that Aparicio's advisory sentencing guideline range was 151–188 months of imprisonment. Applying the asserted lower base offense level of 30 and making the proper adjustment for the 10-year mandatory minimum, Aparicio argues that his advisory sentencing range should have been 120–121 months.

No. 19-50813

methamphetamine hydrochloride of at least 80% purity." U.S.S.G. § 2D1.1(c) n.(C); *see also United States v. Walker*, 688 F.3d 416, 418 n.2 (8th Cir. 2012) ("'Ice' is a purer, more potent form of methamphetamine."). According to the factual basis and PSR, the methamphetamine seized was identified as d-methamphetamine hydrochloride with a net weight of 989 grams and a purity level of 97%, thus it was appropriately classified as "ice" methamphetamine.[3]

We rejected a similar due process challenge in *United States v. Molina*, 469 F.3d 408, 414 (5th Cir. 2006). Molina argued that the district court erred in calculating his sentencing guidelines by using the multiplier for actual methamphetamine instead of the multiplier for methamphetamine mixture or substance, in violation of his due process rights. *Id.* at 412. Like Aparicio, Molina asserted that the appropriate multiplier in the Guidelines calculation was based on the language in the indictment. In rejecting this argument, this court reasoned that Molina misapprehended the operation of the Guidelines. *Id.* at 414.

> The choice of which multiplier to use is not determined by the language of the indictment. Rather, commentary to § 2D1.1 provides: "In the case of a mixture or substance containing . . . methamphetamine, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the . . . methamphetamine (actual), whichever is greater." § 2D1.1(c) n.B. Thus, even if the indictment alleges possession of a mixture or substance containing methamphetamine, the Guidelines' commentary directs the court to apply the offense level determined by the weight of the pure methamphetamine in the mixture or substance if doing so would result in a higher offense level.

---

[3] Aparicio did not object to the PSR's base offense level calculation or its drug quantity and purity level findings. *See United States v. Arechiga-Mendoza*, 566 F. App'x 713, 718–19 (10th Cir. 2014) (holding that because the unchallenged evidence established that the methamphetamine exceeded 93% purity, the court did not clearly err in concluding that the purity of the methamphetamine at issue met the definition of "ice" under the Guidelines).

*Id.* Ultimately, the court rejected Molina's contentions that the harsher actual-methamphetamine multiplier (10:1 ratio) lacked a rational basis or was arbitrary. *Id.* at 413–14; *accord United States v. Reyes-Soto*, 184 F. App'x 777, 781 (10th Cir. 2006).

Regardless of the language of the indictment, the Guidelines advise the district court to apply the offense level determined by the weight of the pure methamphetamine in the mixture or substance if doing so would result in a higher offense level. U.S.S.G. § 2D1.1(c) n.(B); *see also Molina*, 469 F.3d at 414; *United States v. Collamore*, 330 F. App'x 708, 718–719 (10th Cir. 2009) (the district court did not err or otherwise violate defendant's constitutional rights in its application of U.S.S.G. § 2D1.1 and use of the weight of the actual methamphetamine—proven by a preponderance of evidence—because it provided a higher offense level than application of the mixture weight). Accordingly, the district court did not err—plainly or otherwise—in applying the undisputed pure methamphetamine weight to the Drug Quantity Table to determine Aparicio's base offense level.[4]

Aparicio attempts to distinguish *Molina*, contending that his due process complaint is unique because it is based on lack of notice of the charges against him. Nevertheless, his argument fails. An indictment must allege only the "essential element[s] of an offense." *United States v. Wilson*, 884 F.2d 174, 179 (5th Cir. 1989); *see also United States v. Dentler*, 492 F.3d 306, 310–11 (5th Cir. 2007). "Because the fact that the methamphetamine involved in [Aparicio's] offense was 'ice' does not affect the statutory penalty for his crime, that fact is not an 'element' of the offense." *United States v. Clark*, 199 F. App'x 392, 393 (5th Cir. 2006); *accord United States v. Williams*, 246 F. App'x 626, 633–34

---

[4] *See also United States v. Godinez-Perez*, 864 F.3d 1060, 1068–69 (10th Cir. 2016); *United States v. Todero*, 155 F. App'x 437, 438–39 (11th Cir. 2005).

No. 19-50813

(11th Cir. 2007); *see also United States v. Gore*, 212 F. App'x 313, 314 (5th Cir. 2007) (holding, under similar circumstances, that the guilty plea was knowing and voluntary because the defendant was informed of the elements of the offense charged: the "fact that the methamphetamine involved in the offense was 'ice' was not a fact that increased the statutory penalty for [the] crime such that it, in effect, became an essential 'element' of the offense charged.").

Moreover, at the time of his guilty plea, Aparicio stated that he had reviewed the factual basis with his attorney and conceded that the facts contained in the factual basis were "true and accurate." In so doing, Aparicio had notice of and admitted, *inter alia*, that "the substance [he possessed] was, in fact, methamphetamine weighing 989 grams, at 97% purity," an admitted purity level sufficient to qualify as "ice." *Cf. Lee*, 725 F.3d at 1167 (concluding that the district court procedurally erred in applying the 38-level provision in sentencing Lee because, "at the time of making her plea agreement, Lee factually stipulated only to having transported 3 KG of methamphetamine and that she did not admit to any purity level"). Therefore, we reject Aparicio's "lack-of-notice argument" and conclude that the district court did not err in its calculation of Aparicio's base offense level.[5]

As to Aparicio's second challenge on appeal, he fails to show that the district court committed reversible plain error. Aparicio contends that the district court procedurally erred in failing to adjust his sentence to account for time he spent in custody prior to sentencing that he claims will not be credited

---

[5] Furthermore, the district court's findings as to the amount and purity of Aparicio's methamphetamine as "ice," and the resulting advisory guidelines, neither increased Aparicio's mandatory minimum sentence of ten years nor caused his sentence to exceed the statutory maximum of life imprisonment. Because the findings related to drug quantity only increased Aparicio's *discretionary* guideline range, the facts need only be proven by a preponderance of the evidence. *United States v. Romans*, 823 F.3d 299, 316–17 (5th Cir. 2016); *see also United States v. Gore*, 212 F. App'x 313, 314–15 (5th Cir. 2007).

No. 19-50813

to his federal sentence by the BOP. According to Aparicio, the district judge intended for Aparicio to receive this time credit, but mistakenly assumed (and was misinformed) BOP would credit this time. Thus, he requests that the case be remanded so the district court can reduce his sentence for the "nine and a half months spent in state custody."

Aparicio was arrested on December 13, 2018 by the Lorena, Texas Police Department and was charged in McLennan County with possession of methamphetamine, evading arrest, and possession of cocaine. These state charges arose out of the same December 13, 2018 incident as the instant federal charge, and, according to the PSR, remain pending. On January 8, 2019, a one-count indictment was filed accompanied by a writ of habeas corpus ad prosequendum ordering the McLennan County Sheriff to transfer Aparicio to the United States Marshal on January 15, 2019.[6] Aparicio was sentenced in federal court on August 28, 2019. Aparicio was then returned to state custody, but has not yet been sentenced on his state charges.

At sentencing, defense counsel requested that Aparicio's federal sentence "run concurrent with any state sentence to be imposed." The district court granted this request, and ordered that the term of 165 months "imposed in this case shall be served concurrently to any term imposed in McLennan County, Texas arising out of the same offense." *See* U.S.S.G. § 5G1.3(c).

Later in the same discussion, the district court indicated that it takes into consideration "the amount of time someone has spent in prison already" in determining a "fair" sentence. The court then asked counsel whether the amount of time Aparicio has been in state custody would be "count[ed] against" the sentence the court was going to impose. The AUSA stated that he believed

---

[6] A writ of habeas corpus ad prosequendum "merely 'loans' the prisoner to federal authorities." *Dominguez v. Williamson*, 251 F.3d 156 (5th Cir. 2001).

No. 19-50813

Aparicio is "going to get credit for that time." Defense counsel said he believed "that's a call the Bureau of Prisons makes" depending on a designation of federal custody, and "I'm just not so certain that [receiving credit] actually happens."

The final resolution of the custody credit question consisted of the court's quoting the PSR that Aparicio had been in "federal custody since January," and opining that the Bureau of Prisons would "start running" the pending sentence as of January. The court gave the assurance that if Aparicio did not receive the credit the court would be "very sympathetic" to such a post-sentencing claim. Defense counsel did not raise any concerns over the court's response or seek any further clarification.

"After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence." *United States v. Wilson*, 503 U.S. 329, 335 (1992). The computation of a federal sentence requires the BOP to determine the commencement date of the sentence and the extent to which the defendant receives credit for time spent in custody prior to the commencement of his sentence. *See* 18 U.S.C. § 3585. A federal sentence "commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). In calculating a term of imprisonment, 18 U.S.C. § 3585(b) requires that the defendant be given credit "for any time he has spent in official detention prior to the date the sentence commences." The statute provides in relevant part:

> (b) Credit for prior custody – A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences –

8

No. 19-50813

> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

18 U.S.C. § 3585(b); *see also In re U.S. Bureau of Prisons*, 918 F.3d 431, 438 (5th Cir. 2019).

"The Attorney General, through the Bureau of Prisons (BOP), determines what credit . . . will be awarded to prisoners for time spent in custody prior to the commencement of their federal sentences." *Leal v. Tombone*, 341 F.3d 427, 428 (5th Cir. 2003). Federal law "does not authorize a district court to compute the credit at sentencing." *Wilson*, 503 U.S. at 334. Instead, "[b]ecause the offender has a right to certain jail-time credit under § 3585(b), and because the district court cannot determine the amount of the credit at sentencing, the Attorney General has no choice but to make the determination as an administrative matter when imprisoning the defendant." *Id.* at 335.

Aparicio has not shown a clear or obvious error. Despite the court's colloquy about potential credit for time served, neither the court's oral pronouncement of the sentence nor its written judgment impermissibly attempted to award Aparicio credit for time served or to determine the commencement date of the sentence. *Cf. United States v. Maldonado*, 538 F. App'x 457, 458–459 (5th Cir. 2013). Instead, at most, the record suggests that the court imposed a non-binding recommendation to the BOP to account for time. *See United States v. Benavides-Hernandez*, 548 F. App'x 278, 280 (5th Cir. 2013).

9

No. 19-50813

Even if the district court erred, Aparicio has not shown that the district court's purported error affected his substantial rights. *See Sanchez-Hernandez*, 931 F.3d at 410–11. Aparicio was sentenced within the Guidelines range and was not denied relief to which he was entitled.[7] *See United States v. Alonzo*, 435 F.3d 551, 554 (5th Cir. 2006) (within guideline sentences are presumptively reasonable). Aparicio's claim of error is based on his premature and speculative assertion that he will not receive credit for his detention prior to the imposition of his federal sentence. Significantly, it is not yet known how the BOP will calculate Aparicio's sentence and to what extent he will receive credit for time served. *See Crumedy v. United States*, No. 97-41039, 1999 WL 274481, at *1 (5th Cir. Apr. 16, 1999) (per curiam) (The BOP "will not calculate [a defendant's] sentence, including any credit for time served, until he reports for federal custody."); *see also United States v. Cahala*, No. 91-30188, 1992 WL 16804, at *2 (9th Cir. Feb. 4, 1992) (per curiam). Further obscuring the issue, Aparicio has not been sentenced on his state charges.

---

[7] Aparicio's argument that the court erred in failing to follow the requirements of U.S.S.G. § 5G1.3 is meritless. Aparicio argues that U.S.S.G. § 5G1.3 required the district court to (1) determine whether the time Aparicio spent in custody on the state charge will be credited to his federal sentence by the Bureau of Prisons; and (2) adjust his federal sentence downward for any period of imprisonment that he would not be credited by the Bureau of Prisons. These requirements, however, would result from § 5G1.3(b), which Aparicio concedes does not apply in this case. Subsection (b) does not apply to Aparicio's case because there is no state "term of imprisonment [that] resulted from another offense that is relevant conduct to the instant offense." *See* § 5G1.3(b). As noted above, Aparicio has not yet been sentenced in state court and, thus, there is no state term of imprisonment. Aparicio's argument is misplaced because it conflates the requirements of subsection (b) with subsections (c) and (d). *See United States v. Looney*, 606 F. App'x 744, 748 (5th Cir. 2015).

Additionally—because a state sentence has not yet been imposed—it is unclear whether the exceptions for receiving "double credit" to both state and federal sentences for time spent in pre-sentence custody will be relevant to the BOP's calculation. *See, e.g.*, *Willis v. United States*, 438 F.2d 923 (5th Cir. 1971); *Kayfez v. Gasele*, 993 F.2d 1288 (7th Cir. 1993).

No. 19-50813

The BOP, not the district court, is empowered to calculate 18 U.S.C. § 3585(b) credits after the prisoner begins his sentence.[8] *Wilson*, 503 U.S. at 333. Further, the BOP decides "*where* a federal sentence will be served, *when* it begins, and, in certain respects, *how* long it will last." *United States v. Cibrian*, 374 F. App'x 524, 529–30 (5th Cir. 2010) (citations omitted). Because the district court did not exceed its authority and the record does not reflect the outcome of the state proceedings or the BOP's computation of Aparicio's federal sentence, Aparicio has failed to show that the district court plainly erred. *Cf. United States v. Chatman*, No. 19-30529, 2020 WL 3421628 (5th Cir. June 22, 2020) (per curiam) (unpublished). Moreover, prisoners are afforded administrative review of the computation of their credits, and may seek judicial review of these computations after exhausting their administrative remedies.[9] *See, e.g., Wilson*, 503 U.S. at 335 (citations omitted); *Smith v. McConnell*, 950 F.3d 285, 288 (5th Cir. 2020); *United States v. Tindall*, 455 F.3d 885, 888 (8th Cir. 2006).

## IV.

For the foregoing reasons, Aparicio's sentence is AFFIRMED.

---

[8] Pursuant to § 3585(b), "a defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . that has not been credited against another sentence." 18 U.S.C. § 3585(b).

[9] The district court stated at sentencing that it would be "very sympathetic" to a post-sentencing claim depending on the BOP's custody credit calculation.