# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 9, 2022

Lyle W. Cayce
Clerk

No. 21-60633

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

DAVIS LAMAR BROOKS,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:11-CR-38-1

Before WILLETT, ENGELHARDT, and WILSON, *Circuit Judges*.
KURT D. ENGELHARDT, *Circuit Judge*:

After being found not guilty of two firearms offenses by reason of insanity in 2013, Davis Lamar Brooks ("Brooks") was placed on conditional release under 18 U.S.C. § 4243. In 2019 and again in 2020, Brooks moved to discontinue or modify his conditional release. For the reasons that follow, we AFFIRM the district court's denial of Brooks's requests.

I.

In 2011, a federal grand jury charged Brooks with two counts of possessing a firearm as a convicted felon. As his criminal case proceeded, it

became apparent that Brooks was mentally unwell. Gripped by hallucinations and paranoia, Brooks professed, among other things, "that he had [a] microphone inserted in his ear by the Aryan Brotherhood, and indicated [that] he heard voices that were very bothersome to him." Medical examiners diagnosed Brooks with paranoid schizophrenia.

At a 2011 competency hearing, a federal magistrate found that Brooks may have been "suffering from a mental disease or defect rendering him mentally incompetent" and ordered authorities to monitor and treat Brooks accordingly. In hopes of restoring Brooks's mental health and curbing the danger Brooks posed to others, the Bureau of Prisons (BOP) began administering antipsychotic medications to Brooks in 2012. Later that year, Brooks's clinical psychologist increased Brooks's dosage of Haldol—the antipsychotic drug deemed best for Brooks—from 75 milligrams to 100 milligrams and declared it "evident [that Brooks] was experiencing benefits [from] the medication."[1] In June 2012, the Warden of the U.S. Medical Center for Federal Prisoners filed a certificate of Brooks's competency with the district court. At a competency hearing two months later, the district court deemed Brooks competent to stand trial.

Through counsel, Brooks promptly noticed his intent to rely on an insanity defense. The Government, through the BOP, largely accepted that

---

[1] Of note here, Brooks's dosage was eventually reduced to 50 milligrams and 25 milligrams, respectively. A February 2020 report by Brooks's nurse practitioner, Natalie Moody, notes that Brooks's Haldol dosage was decreased to 50 milligrams "per his request" at an April 2019 visit. In the same February 2020 report, Moody "lower[ed] the dose to 25 mg," again at Brooks's request. In ordering the latter reduction, Moody apparently took for granted Brooks's "report[] [that] he feels he does not need the medications," "den[ial] [of] depression, anxiety, or mood swings," and "den[ial] [of] A/V hallucinations [and] any adverse effects." In restoring Brooks's 100-milligram dosage in the order at issue here, the district court took issue with Moody's decision to reduce Brooks's dosage at Brooks's mere request.

Brooks was insane at the time of his alleged offenses. In a January 2013 report, the BOP acknowledged that Brooks had likely "suffered from a psychotic disorder for much of the past nine years" that significantly impaired his "capacity to appreciate the nature, quality, and wrongfulness of his actions." With a general consensus as to Brooks's insanity in place, the district court accepted stipulated facts at a bench trial and found Brooks not guilty by reason of insanity.

The district court then committed Brooks to BOP custody under 18 U.S.C. § 4243 and ordered further psychological examination to determine Brooks's propensity to harm persons or property upon conditional release. In August 2013, a BOP risk assessment found that the risk Brooks would pose to others on conditional release could be sufficiently mitigated by a diligent regimen of antipsychotic medications. After additional hearings and monitoring, the district court ordered that Brooks be "conditionally released in accordance with 18 U.S.C. § 4243(f)," which, as relevant here, provides for an insane defendant's "conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment." In the same breath, the district court prescribed Brooks's regimen of care and treatment— among other things, the court required Brooks to "continue to take such medication, including injectable units, as prescribed for him by [his] medical provider."

Several years of conditional release came and went without issue. Alas, in October 2018, Brooks's probation officer filed a petition alleging multiple violations of Brooks's terms of conditional release after Brooks was arrested for driving under the influence of alcohol. The petition specifically charged Brooks with violating release conditions requiring his compliance with state law and abstinence from alcohol, and, of particular relevance here, failing "to consistently comply with his mental health medication regiment [sic]."

While awaiting a revocation hearing, Brooks filed a motion for unconditional release. At the hearing, the district court found Brooks "guilty of violation" and determined that Brooks "shall remain on conditional release with [the] same medical regimen, with one [peripheral] clarification." In August 2020, Brooks renewed his motion to "terminat[e] his conditional release and bring[] a final end to this case."[2]

The district court held a series of hearings to address Brooks's motion. Receiving testimony from multiple witnesses, the district court diligently reviewed and considered the grounds for Brooks's requests. At an August 13, 2021 hearing, the district court denied Brooks's motion and gave a thorough explanation of its reasons for doing so. The district court also issued an order modifying Brooks's conditions of release. As relevant here, the modified order required Brooks to "receive monthly injections of [Haldol]" at his previously prescribed dosage of 100 milligrams. Understandably, the district court observed that Brooks's 100-milligram dosage had only been reduced because *Brooks* asked for it and articulated a desire for "a medical basis for [a dosage reduction], [as opposed to] a [mere] request from the defendant."

On appeal, Brooks takes issue with two aspects of the district court's rulings. First, he contends that the district court erred by denying his motion for unconditional release. Second, he maintains that the district court erred by ordering his healthcare provider "to administer Haldol injections to [him] in the specific dosage amount of 100 milligrams," a dosage he finds neither acceptable nor necessary. We address both arguments in turn and find both unavailing.

---

[2] In the alternative, Brooks sought a modification of release conditions.

## II.

We begin with Brooks's contention that the district court erred by denying his motion for unconditional release. The district court committed Brooks to conditional release under 18 U.S.C. § 4243(f). Housed in a statute providing for the "[h]ospitalization of a person found not guilty only by reason of insanity," § 4243(f) allows for the "[d]ischarge" of an "acquitted [insane] person" where, among other things, "his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment[] would no longer create a substantial risk of bodily injury to another person or serious damage to property of another." As this snippet makes plain, the appropriateness of and grounds for conditional release are questions of an intensely fact-bound and discretionary nature.

Consequently, as in all fact-intensive matters, we afford broad deference to district court factual determinations under § 4243. The reason why is simple: the district court had a chance to see the defendant and review the pertinent testimony firsthand, but all we see is a cold record of transcripts and documents. Thus, district court findings under § 4243 are reversible for clear error only. *See United States v. Mitchell*, 709 F.3d 436, 443 (5th Cir. 2013); *United States v. Jackson*, 19 F.3d 1003, 1006 (5th Cir. 1994).[3] "Clear-error review only requires a factual finding to be plausible in light of the record as a whole." *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011) (per curiam). As a result, reversal for clear error is appropriate only where "the entire evidence" leaves the reviewing court "with the definite

---

[3] It bears noting that *Mitchell* and *Jackson* pertained to a district court's finding of dangerousness under the neighboring subsections of §§ 4243(g) and 4243(d), respectively. To the extent that we haven't explicitly extended the clear-error standard of review to district court factual findings under § 4243(f) in particular, we do so today for avoidance of doubt.

and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

The record here leaves us with no such conviction—in fact, quite the opposite. In its brief, the Government exhaustively recounts the testimony of two witnesses who lend considerable record support to the district court's factual finding that Brooks was not fit for unconditional release into free society. Those witnesses—Natalie Moody, a nurse practitioner responsible for Brooks's care and extensively familiar with Brooks's case and medical history, and Chris Whitver, Brooks's probation officer—described a defendant with ongoing symptoms of insanity,[4] difficulty complying with the conditions he had moved to terminate,[5] and a continuing need for antipsychotic medications that he had little desire to take and likely would *not* take on the unconditional release he sought. This evidence lends plausibility to the district court's fact-intensive determination, which alone precludes reversal on clear-error review.

## III.

That leaves the second and final issue Brooks raises on appeal: that the district court erred by requiring his antipsychotic medication to be administered in the specific dosage of 100 milligrams. Here as well, § 4243(f) commits to the district court's well-informed discretion the "modif[ication] or eliminat[ion]" of a conditionally released defendant's "regimen of medical, psychiatric, or psychological care or treatment." *See* 18 U.S.C. § 4243(f) ("The court at any time *may*, after a hearing employing the same

---

[4] Such as informing Whitver in January 2019 that "there [were] transmitters in [his] head" and discussing his belief "that the Aryan Brotherhood ha[d] colluded with the doctors who evaluated [him] and [were] not letting that information out."

[5] Such as transitioning himself from Haldol injections to Haldol pills without notifying probation.

criteria, modify or eliminate the regimen of medical, psychiatric, or psychological care or treatment." (emphasis added)); *see also Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994) ("The word 'may' clearly connotes discretion.").

Ordinarily we review a district court's exercise of discretion for *abuse* of such discretion, but here we review for plain error because Brooks clearly failed to preserve this issue in the district court. Indeed, at the conclusion of the hearing on the motion for unconditional release at issue, the district court gave defense counsel the floor to speak. Defense counsel responded "for the record" that he "would object to the Court's ruling that [Brooks] not be finally terminated on conditional release" before stating that "That's all, Your Honor."

As we've repeatedly noted, where an appellant "did not alert the district court to the error of which he . . . complains" on appeal, "our review of the unpreserved issue is for plain error." *United States v. Aparicio*, 963 F.3d 470, 473 n.1 (5th Cir. 2020). "To prevail on plain-error review, [Brooks] must show (1) an error that has not been affirmatively waived, (2) that is clear or obvious, and (3) that affected his substantial rights." *Id.* at 473. Even in the rare case in which an appellant successfully threads this forbidding needle, reversal is only appropriate where our "failure to correct the error would 'seriously affect the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Sanchez-Hernandez*, 931 F.3d 408, 410 (5th Cir. 2019) (quoting *Johnson v. United States*, 520 U.S. 461, 466–67 (1997)).

Brooks clearly flunks this demanding test here. For one, he candidly acknowledges "a dearth of caselaw" supporting his position.[6] For another,

---

[6] This, of course, undermines any prospect of establishing *plain* error. *Cf. United States v. Gozes-Wagner*, 977 F.3d 323, 348 (5th Cir. 2020) (noting that "we ordinarily do

No. 21-60633

the district court's restoration of Brooks's dosage to prior levels is understandable on its own terms. At bottom, the district court insisted that reductions in the dosage of Brooks's antipsychotic medication be made for reasons other than Brooks's own behest. This reasonable ruling did not constitute plain error.

*     *     *

18 U.S.C. § 4243 applies to federal criminal defendants "found not guilty only by reason of insanity." In certain cases like this one, an insane defendant is *released* from custody under a prescribed medical regimen designed to promote his recovery and protect society from any ill effects that might accompany his unconditional release. In such cases, it is reasonable to defer to the district court's superior knowledge of the defendant's situation—particularly when the statute Congress designed commands just that. A defendant seeking to overturn a district court's decisions in such a case faces an uphill climb, and—at least for now—Brooks fails in that regard here.

Accordingly, the district court is AFFIRMED.

---

not find plain error where there is an absence of authority on point" (quoting *United States v. Rubio-Sorto*, 760 F. App'x 258, 260 (5th Cir. 2019) (per curiam))).